## STATE v. DARYL WAYNE HARRIS.

202 N. W. 2d 878.

November 24, 1972—No. 43488.

*Harry N. Ray,* for appellant.

*Warren Spannaus,* Attorney General, and *Thomas G. Lockhart,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Otis, Peterson, and Kelly, JJ.

PER CURIAM.

This appeal is from a judgment by the district court without a jury sustaining an order of the commissioner of highways revoking defendant's driver's license. We affirm.

On October 29, 1970, between 10:30 and 10:50 p. m., Officer James A. Reibel, a highway patrolman, answered a call to proceed to a point on Interstate Highway No. 35E between State Highway No. 36 and Little Canada Road. Upon arrival he observed a vehicle parked at an angle on the shoulder with the left rear portion extending approximately 2 to 3 feet into the right, northbound traffic lane. The motor of the vehicle was running,

with the headlights and taillights on. The patrolman also heard a horn honking which appeared to be coming from the vehicle. The defendant was observed sitting in the driver's seat "slightly slumped over the steering wheel." No movement was observed.

Patrolman Reibel approached the vehicle, shined his flashlight in the window, and opened the door, at which time the defendant turned and faced him. Upon the patrolman's request, the defendant stepped out of his vehicle. Neither could recall whether defendant turned off the ignition or manipulated any controls prior to alighting from the vehicle. The patrolman noticed an odor of alcohol about the defendant and that he swayed. Defendant was escorted to the passenger side of the patrol car with the patrolman holding his arm to prevent him from straying into the traffic lane. In the patrol car he was placed under arrest.

Defendant was taken to the Ramsey County Patrol Station at Rice Street and Highway No. I-694, arriving at approximately 11 p. m., and was requested to submit to testing for alcohol. He refused all methods of testing and was taken to Ramsey County Jail.

Defendant testified that he worked at two different jobs during the week and on the evening in question he was proceeding to his second employment. He further testified that he pulled onto the shoulder because he was tired and that he believed he was asleep when the officer confronted him.

Minnesota's implied-consent statute, Minn. St. 169.123, provides that any person who drives or operates a motor vehicle upon the public highways is deemed to have consented to a blood, breath, or urine analysis to determine if he is under the influence of an alcoholic beverage. The defendant here testified that he had driven his car to the place where he was arrested. The statute in force at that time was Minn. St. 1969, § 169.123, subd. 2, which provided in part:

"* * * The test shall be administered at the direction of a peace officer, when (1) the officer has reasonable and probable

grounds to believe that a person was driving or operating a motor vehicle while said person was under the influence of an alcoholic beverage, and (2) the said person has been lawfully placed under arrest for alleged commission of the said described offense in violation of Minnesota Statutes, Section 169.121, or an ordinance in conformity therewith. No action shall be taken hereunder against the said person unless the two enumerated conditions existed at the time the officer requested the chemical test specimen."

The sole issue presented by this appeal is whether the patrolman had reasonable and probable grounds for believing that at the time of the arrest on October 29, 1970, the defendant was "operating" a motor vehicle within the purview of § 169.123. It is defendant's position that he was not. Defendant has not at any time questioned the lawfulness of the arrest (the second condition of the statute quoted above).

The precise issue has never been confronted in this state under the implied-consent statute although the term "operate" has been construed under Minn. St. 169.121, which imposes criminal penalties for driving while under the influence of an alcoholic beverage. These two statutes differ with respect to the situations in which they may be invoked. Section 169.121 enumerates three situations for invoking the statute: (1) Driving, (2) operating, or (3) being in actual physical control. On the other hand, the implied-consent statute limits its application to the first two of these situations. Defendant concludes from this that the legislature intended to restrict the implied-consent statute so as not to encompass any conduct within the definition of "operate" which would be considered "being in actual control" under the criminal statute, § 169.121.

Defendant relies heavily on the recent decision of this court which construed the meaning of "operating" under this criminal statute. In State v. Cormican, 292 Minn. 505, 195 N. W. 2d 586 (1972), a Minnesota highway patrolman found the defendant

lying in his pickup at about midnight in an inebriated condition. The pickup was parked on the shoulder of the road with its motor running and parking lights on. The defendant was lying on the seat with his head toward the right door and his feet on the floor. His body was in no manner in contact with any of the vehicle's controls. When aroused, the defendant appeared drunk and was arrested and convicted for "operating" a motor vehicle while intoxicated. The patrolman had no warrant for arrest and therefore could not legally make an arrest unless the offense was committed or attempted in his presence. Minn. St. 629.34; State v. Miller, 290 Minn. 33, 185 N. W. 2d 872 (1971). In reversing the conviction, this court said: (292 Minn. 506, 195 N. W. 2d 587)

"Defendant was here charged with operating a motor vehicle while under the influence of an alcoholic beverage rather than being 'in actual physical control' thereof. There was no evidence indicating that the officers observed defendant 'operating' the truck. The evidence was uncontroverted that defendant's truck had been moved by the informants from a position on the highway, where it may have been under the control of defendant, to the shoulder, where it was found by the arresting officers. Under those circumstances the arrest was improper."

The issue in Cormican was whether the officers had observed the defendant operating the truck as contrasted with the issue in this case, i. e., whether the officer had reasonable and probable grounds for believing that the defendant was operating the vehicle while under the influence of an alcoholic beverage.

Under the totality of the circumstances present in this case and observed by the patrolman, he had reasonable and probable grounds for a belief that defendant was driving or operating the vehicle while under the influence of an alcoholic beverage. The motor was running, the vehicle was partially on the freeway, and defendant was alone and seated in the driver's seat. The odor of alcohol about the defendant, his slumped position, and the fact that he swayed certainly justified a belief by the patrolman that

defendant was under the influence. The patrolman didn't need to observe the defendant in the act of driving or operating the vehicle to request a test to determine the alcoholic content of his blood. All he needed was reasonable grounds for forming a belief that the defendant had been driving or had been operating the vehicle. Reasonable and probable grounds justifying an officer in requesting an individual to take a test for driving while under the influence of alcoholic beverage under the implied-consent law exist whenever there are facts and circumstances known to the officer which would warrant a prudent man in believing that the individual was driving or was operating a motor vehicle on the highway while under the influence of an alcoholic beverage. The phrase "reasonable and probable grounds" is synonymous with the phrases "reasonable cause" and "probable cause."

In State v. Sorenson, 270 Minn. 186, 196, 134 N. W. 2d 115, 122 (1965), we stated:

"It is clear that § 629.34(3) allows a police officer to arrest a suspect without an arrest warrant when a felony has occurred, and he has reasonable cause for believing that the suspect committed it. We have held that 'reasonable cause' here and the 'probable cause' required by the Fourth Amendment are synonymous.

\* \* \* \* \*

"Probable cause for an arrest has been defined to be a 'reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.' "

We paraphrase the last-quoted statement as follows: In the present case the circumstances were sufficiently strong in themselves to warrant a cautious man in believing the defendant had been driving and operating the car.

If an issue had been raised in this case questioning the lawfulness of the arrest, this court would not necessarily have been confronted with the same issue that was raised in Cormican. In Cormican, for some unknown reason the defendant was charged

merely with "operating" a motor vehicle while under the influence of an alcoholic beverage whereas it seems patent he could have been charged with being "in actual physical control" thereof. Rather obviously, the latter charge is more comprehensive. The record is not entirely clear as to the exact charge made here in connection with the arrest. No doubt counsel for defendant concluded that this court would not declare the arrest invalid and did not appeal on that ground. Therefore, Cormican is not controlling in this case because the validity of the arrest has not been put in issue on appeal. However, if defendant was charged with being in physical control of the vehicle in violation of Minn. St. 169.121, given the facts in this case, clearly the arrest would have been valid.

Affirmed.