**Robert HEWITT, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. CX–83–1784.**

Court of Appeals of Minnesota.

July 17, 1984.

Dan K. Prochnow, Cragg & Bailey, Ltd., Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Linda F. Close, Joel A. Watne, Sp. Asst. Attys. Gen., St. Paul, for respondent.

Heard, considered and decided by SEDG-WICK, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

The trial court sustained revocation of appellant's drivers license due to his refusal of implied consent testing, and this appeal followed. Appellant contends a demand for testing and an earlier demand for a screening test were improper due primarily to the absence of an officer's personal observation of his driving conduct. We affirm.

## FACTS

On August 19, 1983 at approximately 5:15 a.m., Trooper Brad Anderson and a colleague were dispatched to a single car accident at the River Bridge on Interstate Highway 35–W. The colleague arrived first and found the car "totaled out." Behind the wrecked car was a blue Chevy Camero.

Appellant, Robert Hewitt, was a witness present at the scene. Anderson was asked by his colleague to speak to Hewitt and "see about the possibility" of giving Hewitt a preliminary breath test. Hewitt and Anderson discussed the accident. Anderson testified that Hewitt said:

> He (Hewitt) had been in front of the other vehicle and the other vehicle had spun out behind him striking a guard rail. He (Hewitt) had exited and come back around .... and then come back up behind it because he knew the driver of the other vehicle.

Hewitt said he was the sole occupant of the Camero.

At the time of this conversation, Hewitt and Anderson stood three feet apart. Anderson smelled "a real strong odor of alcoholic beverage on Hewitt's breath," and

consequently asked if Hewitt had been drinking that night. Hewitt replied that he had been drinking and that he had been at an all-night stag party with the driver of the wrecked vehicle. Anderson also noticed that Hewitt's eyes were bloodshot and watery and that his speech appeared to be slurred.

Anderson asked Hewitt to take a preliminary breath test. The instrument was calibrated to read fail at 0.10 alcohol concentration. Hewitt agreed to take the test and failed. Concluding that Hewitt was under the influence of alcohol, Anderson placed Hewitt under arrest.

Anderson began the implied consent advisory at the scene of the accident and completed it at the Minneapolis Police Department Testing Facility. Anderson and Hewitt left the accident scene so that Hewitt could use a phone at the Police Department. Hewitt made two calls and then refused to take the breathalyzer test because he did not believe he drank enough to be DWI.

On cross-examination Anderson testified that he did not see Hewitt driving, operating or in physical control of a vehicle that evening. Nor is this a case where another officer saw and reported to Anderson that Hewitt was operating or driving a vehicle in an erratic manner or that he was in physical control of the vehicle in an intoxicated state. See *State v. Jensen*, 351 N.W.2d 29 (Minn.Ct.App.1984).

Testimony showed that Anderson had been a State Trooper for four years and had seen people under the influence of alcohol several hundred times annually.

## ISSUES

1. Did the State Trooper properly require appellant to submit to a preliminary screening test?

2. Did the State Trooper properly invoke the Implied Consent Statute?

## ANALYSIS

■ To properly demand a preliminary screening test an officer must have "rea-son to believe" a DWI violation has occurred. Minn.Stat. § 169.121(6) (1982). To properly demand implied consent testing an officer must have "reasonable and probable grounds to believe" such an offense has occurred. § 169.123(2) (Supp.1983). In *State v. Olson*, 342 N.W.2d 638 (Minn.Ct.App.1984), we stated these standards on the determination of probable cause for implied consent testing purposes:

> There is no formula by which to judge the reasonableness of a given case. Each must be decided on its own facts and circumstances. In reviewing an officer's probable cause determination 'great deference' should be paid by reviewing courts. (citations omitted)
>
> An after-the-fact scrutiny should not take the form of a de novo review. Rather, the duty of the reviewing court is simply to ensure that the officer had a substantial basis for concluding that probable cause existed at the time of invoking the implied consent law. (citation omitted)

Id. at 640, 641.

There was ample cause for Trooper Anderson to believe appellant was "under the influence of alcohol," one of the two elements of a DWI offense. This conclusion has regard for the training and experience of the trooper and his observations of appellant, including appellant's remarks about prior drinking activity.

Trooper Anderson knew that appellant drove to the scene of the accident and departed from his vehicle. This conduct did not occur in the presence of Trooper Anderson. Appellant contends it is significant that the legality of the officer's arrest depended upon commission of an offense "in his presence" under Minn.Stat. § 629.-341(1) (1982).

■ Minn.Stat. § 169.121(6) (1982) states:

> When a peace officer has reason to believe from the manner in which a person is driving, operating, controlling, or acting upon departure from a motor vehicle, or has driven, operated, or controlled a

motor vehicle, that the driver may be violating or has violated subdivision 1, he may require the driver to provide a sample of his breath for a preliminary screening test using a device approved by the commissioner of public safety for this purpose.

Relying on the reference to the "manner" of a person's conduct, appellant contends the officer must observe the conduct. This is a constrained and improper view of the statutory language. The statute allows the police officer to form a reasonable belief about a violation from the manner in which a person is acting on departure from a motor vehicle, and the statute does not suggest that actions are limited to those of physically making an exit from the vehicle. Additionally, the Minnesota Supreme Court has observed that the statute clearly permits consideration of past conduct not witnessed by the officer. *State, Department of Public Safety v. Juncewski*, 308 N.W.2d 316 (Minn.1981). The Court stated:

> That statute [Minn.Stat. § 169.121(6)] clearly refers to both present and past conduct. Past conduct includes conduct not witnessed by the officer. Any other construction would render the "is driving ... or has driven ..." language meaningless. The use of the past tense can only refer to situations where the officer did not witness the actual driving, but nevertheless had a specific and articulable suspicion of a violation of Minn.Stat. § 169.121 (1980).

Minn.Stat. § 169.123(2)(a) (Supp.1983), the Implied Consent Statute, reads in part:

> The test shall be administered at the direction of a peace officer. The test may be required of a person when an officer has reasonable and probable grounds to believe the person was driving, operating, or in physical control of the motor vehicle in violation of Section 169.121 and one of the following conditions exist: (1) the person has been lawfully placed under arrest for violation of section 169.121, or an ordinance in conformity therewith; or (2) the person has been involved in a motor vehicle accident

or collision resulting in property damage, personal injury, or death; or (3) the person has refused to take the screening test provided for by section 169.121, subdivision 6; or (4) the screening test was administered and recorded an alcohol concentration of 0.10 or more.

Appellant again submits that the statutory "reasonable and probable cause" required for chemical testing can be no less than the cause required for a warrantless misdemeanor arrest under Minn.Stat. § 629.34 (1982), which requires commission or attempt of an offense in the officer's presence.

Here the implied consent testing was based on the earlier result in a preliminary test. We are not dealing with another among the bases for implied consent testing, the occurrence of a DWI arrest. In case of testing based on an arrest the standard of Minn.Stat. § 629.34 would of course apply.

For implied consent testing based on conditions other than arrest appellant's argument conflicts with the decision of the Minnesota Supreme Court in *State v. Harris*, 295 Minn. 38, 202 N.W.2d 878 (1972). This case dealt with probable grounds for believing a vehicle was unlawfully operated. The court's decision included this conclusion:

> The patrolman didn't need to observe the defendant in the act of driving or operating the vehicle to request a test to determine the alcoholic content of his blood. All he needed was reasonable grounds for forming a belief that the defendant had been driving or had been operating the vehicle. Reasonable and probable grounds justifying an officer in requesting an individual to take a test for driving while under the influence of alcoholic beverage under the implied-consent law exist whenever there are facts and circumstances known to the officer which would warrant a prudent man in believing that the individual was driving or was operating a motor vehicle on the

highway while under the influence of an alcoholic beverage.

*Id.* 202 N.W.2d at 880, 881.

The view in the *Harris* decision is supported by general principles reaffirmed in *Szczech v. Commissioner of Public Safety,* 343 N.W.2d 305 (Minn.Ct.App.1984), namely:

It has long been settled that laws relating to the revocation of driving privileges, including Minn.Stat. § 169.123 (1982), are not 'penal' in nature but are remedial statutes intended for the protection of the public and are to be liberally construed towards that end. *State, Department of Highways v. Normandin,* 284 Minn. 24, 169 N.W.2d 222 (1969) ... (and that) the Legislature has demonstrated its intent to have the statutes cover 'the broadest possible range of conduct' and be given 'the broadest possible effect.' (quoting *State, Department of Public Safety v. Juncewski, Id.* at 319).

*Id.* at 306, 307.

## DECISION

■ Trooper Anderson properly demanded preliminary screening and implied consent testing.

Affirmed.