David Alan BOHLIG,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C5–85–1261.

Court of Appeals of Minnesota.

Jan. 21, 1986.

Robert H. Wenner, St. Cloud, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Mary B. Magnuson, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER, and FOLEY, JJ., with oral argument waived.

PARKER, Judge.

After an implied consent hearing, the trial court rescinded the revocation of respondent David Bohlig's driver's license under Minn.Stat. § 169.123 (1984). The Commissioner of Public Safety appeals the trial court's order. We reverse.

## FACTS

On February 15, 1985, at 9:57 p.m., Officer Robert Johnson, a certified police officer, was dispatched to Lake George, located in St. Cloud, because there was a pickup truck stuck in a snowbank on park property. Johnson arrived and called for a tow truck from the Granite City Towing Company, but then cancelled the tow because he learned from the dispatcher that a tow truck from Andy's Towing had already been called. The complainant, Rodney Tuscher, told Johnson that the two individuals whose truck was stuck came into the warming house on the east side of Lake George and spoke with him. He offered them the use of a telephone and loaned them a shovel to dig the truck out. The officer did not know whether Tuscher saw the men in the truck or whether he saw it at the time it became stuck. Tuscher described the men as being in their twenties, with an odor of alcohol on their persons.

The tow truck arrived at approximately 10:15 p.m. and pulled the truck out of the snowbank. Johnson ran a license check and found that the truck was registered to Gerald Joseph Bohlig. Johnson had heard from his dispatcher that the individual who called Andy's was apprehensive about returning to the scene because police officers might be present. He waited in his squad car in an alley about two blocks from the trucks. When he saw two men walking toward the trucks, he drove back to talk to them. Johnson asked the two men who had been driving. Initially, they both said they had been driving. Bohlig then said that he was driving. The other man explained that he had been driving earlier in the evening but not when the truck had become stuck. Johnson also saw Bohlig take keys from his pocket and give them to the tow truck driver.

While talking to the men, Johnson observed that Bohlig had bloodshot eyes and an odor of alcohol about him. Bohlig took a preliminary breath test and failed it. Johnson testified that he asked Bohlig about his drinking, and Bohlig said he had had nothing to drink from the time the truck was stuck until the time he came back to the truck. On cross-examination Johnson testified that there was nothing in his police report indicating that Bohlig had said he had nothing to drink after the truck became stuck. Johnson testified upon redirect that it was an oversight and that he specifically recalled that fact. Johnson believed Bohlig told him this fact while they were still at Lake George, although it could have been in the squad car.

Johnson concluded that Bohlig was under the influence of alcohol and arrested him. He read Bohlig the implied consent advisory at approximately 10:29 p.m. and brought him to the St. Cloud Police Department. Sergeant James Smith, a certified Intoxilyzer operator, performed the Intoxilyzer test on Bohlig and obtained a reading of .16.

The trial court found there was some doubt as to Bohlig's condition at the time he was driving and that the evidence was inconclusive as to how much time had elapsed from the time Bohlig's truck was stuck until the time Johnson questioned him. The trial court rescinded the revocation, and the Commissioner appeals.

## ISSUE

Did the trial court err in concluding that there was insufficient probable cause to believe that respondent had been driving while under the influence?

## ANALYSIS

Before requiring a person to submit to chemical testing, Minn.Stat. § 169.123, subd. 2 (1984), requires that an officer have "probable cause to believe the person had been driving, operating, or in physical control of a motor vehicle in violation of Section 169.121 * * *." *Id.* The issue which arises here is whether the trial court erred

in finding that under *Dietrich v. Commissioner of Public Safety*, 363 N.W.2d 801 (Minn.Ct.App.1985), the police officer had insufficient probable cause to believe that Bohlig had been driving while under the influence of alcohol. *See Burke v. Commissioner of Public Safety*, 377 N.W.2d 78 (Minn.Ct.App.1985); *Graham v. Commissioner of Public Safety*, 374 N.W.2d 809 (Minn.Ct.App.1985); *Hasbrook v. Commissioner of Public Safety*, 374 N.W.2d 592 (Minn.Ct.App.1985).

■ "Probable cause exists where all the facts and circumstances would warrant a cautious person to believe that the suspect was driving or operating a vehicle while under the influence." *Johnson v. Commissioner of Public Safety*, 366 N.W.2d 347, 350 (Minn.Ct.App.1985). It must be evaluated from the point of view of a "prudent and cautious" police officer. *Id.*

■ The determination of probable cause is a mixed question of fact and law. Once the facts are found, the court must apply the law to determine whether probable cause existed. *Id.* The Commissioner contends the trial court erroneously construed and applied the law applicable to the case. Bohlig argues that the trial court applied the correct law, and its finding that the officer lacked probable cause was sustained by the evidence.

■ In order to have probable cause to arrest for driving while under the influence, the evidence must indicate a connection between Bohlig's drinking and driving. *Dietrich*, 363 N.W.2d at 803. The officer need not testify explicitly as to the time of the accident. *Graham*, 374 N.W.2d at 811. Nor need the police officer actually observe the person driving in order to establish probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol. *State v. Harris*, 295 Minn. 38, 42, 202 N.W.2d 878, 880–81 (1972). However, facts must be present which provide a sufficient time frame showing the connection between the drinking and driving. *Hasbrook*, 374 N.W.2d at 594.

■ The trial court may have applied a higher standard of proof than was necessary; it expressed some doubt as to Bohlig's condition while driving. The proper standard of proof is whether the Commissioner has shown that Bohlig was driving while under the influence by a preponderance of the evidence. While making no explicit findings of fact, the trial court stated that the proof was inadequate to believe Bohlig had been driving while under the influence. No indication was given that the officer's testimony was rejected.

We wish to emphasize that the officer need not testify explicitly as to the time of the drinking and driving. *Graham*, 374 N.W.2d at 811.

■ Here, the complainant told Johnson that the men smelled of alcohol when they came in the warming house. In *Dietrich* the passerby who commented that Dietrich was the driver did not indicate that Dietrich was under the influence. Bohlig admitted driving, and Officer Johnson observed indicia of intoxication and testified that Bohlig told him he had nothing to drink in the interim. In this case the evidence was sufficient as a matter of law to show that the officer had probable cause to believe Bohlig was driving while under the influence.

## DECISION

The trial court's decision that there is insufficient probable cause to believe that respondent was driving while intoxicated is reversed. The Commissioner's revocation order is reinstated.

Reversed.