Jeffrey **FOSTER**, Petitioner, Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. C1–85–1953.

Court of Appeals of Minnesota.

Feb. 18, 1986.

Deborah K. Ellis, St. Paul, for respondent.

Hubert H. Humphrey, III, State Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Respondent's driving privileges were revoked pursuant to the implied consent law. He petitioned for judicial review, and the trial court rescinded the revocation, holding that there was an insufficient time frame to connect respondent's drinking and driving. The Commissioner of Public Safety appeals. We reverse.

## FACTS

State Trooper Steven Pott, a certified peace officer and certified Intoxilyzer operator, was on duty the evening of December 23, 1984. About 3 a.m., while driving south on Highway 35E near Highway 36, he saw tire tracks going into the ditch on the right side. He saw a car at the bottom of the embankment against the freeway fence with minor damage on the right side. Pott called a tow truck.

Respondent Jeffrey Foster and his father arrived on the scene a few minutes later. Jeffrey Foster told Pott that he had been driving, and that he had been run off the road by a van. Pott put Foster in the back seat of the car. While talking to him, Pott smelled an odor of alcoholic beverages on respondent's breath, and observed that his eyes were bloodshot and his speech was slurred. Pott testified that Foster said he had been drinking earlier in the evening, but had nothing since the accident.

Respondent took a preliminary breath test, which he failed. Pott formed the opinion that he was intoxicated, and placed him under arrest for driving while intoxicated.

Pott waited for the tow to finish pulling the car out. He told respondent's father that respondent would be going to the St. Paul Police Department. Pott read the implied consent advisory to respondent at 3:27 a.m. and respondent agreed to take the breath test.

Pott testified that respondent told him the accident happened around two o'clock, but could not remember at what point respondent gave him this information. He normally patrols past the point at which the car was found between 10:45 p.m. and 11:15 p.m., but could not specifically recall whether or not he drove past the spot at that time that evening. His shift began at 10:30. He had no personal knowledge of when the accident occurred.

Respondent's father, Ken Foster, testified that he woke up at approximately 2:45 in the morning and noticed the light and television were on in the family room. He saw Jeffrey sitting at the kitchen table

watching television and drinking a glass of wine. He asked Jeffrey why he was home at that particular time, and respondent said something to the effect of "don't ask" or "you don't really want to know." Respondent then told his father that his car went off the road an hour or two earlier, and that he would take care of it the next day. Ken Foster insisted they call a tow truck and take care of the car immediately.

Ken Foster drove to the scene with his son. When they arrived, the tow truck which Pott called and the police officer's vehicle were present. The tow service which respondent called also arrived. Foster testified that the trooper talked to his son out of his earshot, and also had a conversation with him in the police car. Foster also testified it had been snowing earlier and a light snow may still have been falling.

Respondent declined to testify on the basis of the fifth amendment.

The trial court found reasonable and probable cause to believe Jeffrey Foster was driving the car involved in the accident and that he was under the influence of alcohol when observed by Pott. The court expressed concern that the evidence did not establish the necessary connection between the events as required under *Dietrich v. Commissioner of Public Safety*, 363 N.W.2d 801 (Minn.Ct.App.1985).

The trial court ordered that revocation of respondent's driving privileges be rescinded. The license had already been returned to respondent at the time of the hearing, and the court ordered reimbursement to respondent of the $160 incurred for his reinstatement expenses.

## ISSUE

Did the trial court err in rescinding the revocation of respondent's driving privileges?

## ANALYSIS

The trial court rescinded the revocation of respondent's driving privileges on the basis of *Dietrich*. It stated that:

the fact that Mr. Foster was involved in an accident and later found to be under the influence establishes a sequence of events but does not provide sufficient time frame for the sequence. The testimony that over the course of the evening, but not knowing when in the evening Trooper Pott received the information that the accident occurred at about two o'clock suggests proximity in time. But this inference is not sufficient to establish the necessary temporal connection as the Court understands is required in Dietrich. The Court therefore finds that the testimony as required under Dietrich does not provide sufficient and reasonable probable grounds to believe that Mr. Foster was driving a motor vehicle as required for a license revocation.

In *Dietrich* the evidence established reasonable and probable grounds to believe that Dietrich was driving the car involved in the collision and that Dietrich was under the influence of alcohol at the time the officer observed him in his home. *Dietrich*, 363 N.W.2d at 803. There were no facts indicating that he was under the influence at the time he drove the car. That is not the case here. Foster admitted he had been driving. He admitted he had been drinking earlier in the evening, but stated he had nothing to drink since the accident. He then was offered a preliminary breath test and failed it.

The officer had probable cause to believe Foster was driving a car while under the influence of alcohol, since he admitted driving, admitted not drinking since the accident and failed the preliminary breath test. The temporal connection absent in *Dietrich* is present here. The fact that the time of the accident isn't known is not necessary when, as here, the facts support the requisite probable cause that he drove while under the influence.

The respondent did not testify, so there was no testimony to rebut Officer Pott's statement that respondent told him he had been drinking early in the evening, but had

nothing to drink from the time of the accident. The father's testimony that he observed his son drinking wine at home does not refute the fact that the son *said* he did not.

. ▇ This court has stated in cases subsequent to *Dietrich* that the officer need not testify explicitly as to the time of the accident. *Graham v. Commissioner of Public Safety*, 374 N.W.2d 809, 811 (Minn. Ct.App.1985). There must be facts which provide a time frame to show the connection between driving and drinking. *Hasbrook v. Commissioner of Public Safety*, 374 N.W.2d 592, 594 (Minn.Ct.App.1985). In addition, in making a probable cause determination, we must look at the facts from the point of view of a "prudent and cautious" police officer. *Johnson v. Commissioner of Public Safety*, 366 N.W.2d 347, 350 (Minn.Ct.App.1985) (citations omitted). Probable cause exists when "all the facts and circumstances would warrant a cautious person to believe that the suspect was driving or operating a vehicle while under the influence." *Id.* (citations omitted). The officer need not actually see the person driving in order to have probable cause. *State v. Harris*, 295 Minn. 38, 42, 202 N.W.2d 878, 880–81 (1972).

▇ In considering whether probable cause exists, this court must consider the information which the officer had at the time of the arrest. As the trial court found the facts, respondent was in an accident and was later found to be under the influence. But the temporal connection missing in *Dietrich* is present here by respondent's admissions, coupled with the officer's observations.

## DECISION

The trial court erred when it determined that the officer did not have sufficient probable cause to believe that respondent was driving while intoxicated.

Reversed.