*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1660**

Jodie Kay Raskovich, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed June 13, 2016
Affirmed
Schellhas, Judge**

Scott County District Court
File No. 70-CV-15-5513

Ryan L. Kaess, Kaess Law, LLC, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Bratvold, Judge.

## U N P U B L I S H E D   O P I N I O N

**SCHELLHAS**, Judge

Appellant challenges the district court's denial of her petition to rescind her driver's license revocation. We affirm.

## FACTS

On February 6, 2015, Shakopee Police Officer Molly Moonen and her partner responded to a report of a drunk and disorderly patron at a hair salon, whom the salon owner identified as appellant Jodie Kay Raskovich. Officer Moonen approached Raskovich as she walked out of the salon, spoke with Raskovich, and observed indicia of intoxication. Raskovich admitted that she had "a couple" of drinks at lunch before driving to the salon and denied drinking anything after she drove to the salon. Raskovich failed a preliminary breath test, and Officer Moonen arrested her for driving while impaired (DWI) and transported her to the police station, where Officer Moonen read to Raskovich the implied-consent advisory. Raskovich stated that she understood the advisory, consulted with an attorney by phone, and agreed to provide a urine sample for chemical testing. That test showed an alcohol concentration of 0.195.

Respondent Minnesota Commissioner of Public Safety revoked Raskovich's driver's license. Raskovich timely filed an implied-consent petition, seeking rescission of the revocation. The district court conducted a hearing on the petition on July 30, 2015, at which hearing Officer Moonen testified and Raskovich raised issues regarding the legality of her stop, arrest, and urine test. On August 11, a different district court judge conducted an omnibus hearing in Raskovich's DWI case. Officer Moonen and her partner testified at the omnibus hearing. On August 28, Raskovich moved to reopen the record in connection with her implied-consent petition to offer additional testimony from Officer Moonen. Raskovich claimed that Officer Moonen gave "differing answers" at the implied-consent and omnibus hearings. The commissioner opposed Raskovich's motion to reopen the

record, and the court "decline[d] to entertain" Raskovich's motion to reopen the record and denied her implied-consent petition.

This appeal follows.

**D E C I S I O N**

"This court reviews the district court's findings supporting an order sustaining a license revocation for clear error." *Axelberg v. Comm'r of Pub. Safety*, 831 N.W.2d 682, 684 (Minn. App. 2013), *aff'd*, 848 N.W.2d 206 (Minn. 2014). "We give de novo review to questions of law in implied-consent proceedings." *Id.*

In this case, Raskovich first argues that the district court erred by failing to reopen the implied-consent record. Raskovich cites no Minnesota authority permitting—much less mandating—the reopening of the record from an implied-consent hearing on the petitioner's motion. We have found no such authority. Moreover, as noted by the commissioner, Raskovich's motion to reopen the record relied on nothing more than her counsel's unsworn statement that "[b]ased on [Officer Moonen's] testimony and the testimony of her partner [at the omnibus hearing,] I believe [Officer Moonen] was less than candid in her testimony at th[e implied-consent] hearing." Raskovich did not support her motion with an affidavit, exhibit, or memorandum of law. We conclude that the district court did not err by declining to reopen the implied-consent record on the basis of Raskovich's counsel's unsworn and unsupported attack on Officer Moonen's candor.

Raskovich next argues that the district court erred by denying her implied-consent petition in reliance on Officer Moonen's testimony that Raskovich admitted driving. Raskovich apparently claims that her inculpatory statement to Officer Moonen was

3

inadmissible hearsay because the commissioner failed to satisfy the corroborating-circumstances requirement of the hearsay exception for statements against interest. This claim lacks any merit because the challenged testimony recounted the statement of a party opponent; the statement therefore was not hearsay. *See* Minn. R. Evid. 801(d) (providing that "[a] statement is not hearsay if . . . [it] is offered against a party and is . . . the party's own statement").

Raskovich also argues that, aside from Officer Moonen's testimony that Raskovich admitted driving to the salon after drinking, "there is no evidence that [Raskovich] even drove a vehicle intoxicated that day to the Salon." We construe this as an argument that Officer Moonen's testimony is insufficient evidence on which to base a denial of her implied-consent petition.

"In a judicial review hearing for a driver's license revocation under the implied-consent statute, the commissioner must demonstrate by a preponderance of the evidence that license revocation is appropriate." *Axelberg*, 831 N.W.2d at 684. License revocation is appropriate only if the arresting officer had probable cause to believe that the petitioner was driving while impaired. *See* Minn. Stat. §§ 169A.51, subd. 1 (providing that peace officer may invoke implied-consent law on probable cause to believe the person was driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 (driving while impaired)), .53, subd. 3(b) (providing that scope of implied-consent hearing includes question, "Did the peace officer have probable cause to believe the person was driving, operating, or in physical control of a motor vehicle . . . in violation of section 169A.20 (driving while impaired)?") (2014). Such probable cause exists "whenever there

4

are facts and circumstances known to the officer which would warrant a prudent man in believing that the individual was driving or was operating or was in physical control of a motor vehicle while impaired." *State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011) (quotation omitted).

"An officer need not personally observe the driving . . . of the vehicle" to have probable cause to believe that a particular person was driving the vehicle while impaired. *Delong v. Comm'r of Pub. Safety*, 386 N.W.2d 296, 298 (Minn. App. 1986) (citing *State v. Harris*, 295 Minn. 38, 42, 202 N.W.2d 878, 880–81 (1972)), *review denied* (Minn. June 13, 1986); *accord Johnson v. Comm'r of Pub. Safety*, 366 N.W.2d 347, 350 (Minn. App. 1985). And a person's admission of driving a proximate vehicle may contribute to an officer's probable cause to believe that the person was driving the vehicle while impaired. *See Edwards v. Comm'r of Pub. Safety*, 381 N.W.2d 27, 28–30 (Minn. App. 1986) (concluding that officer had probable cause to believe that petitioner was driving while impaired where officer stopped vehicle in which petitioner was passenger, vehicle's driver stated that petitioner had driven vehicle in downtown area, and petitioner admitted to driving vehicle in downtown area); *Bohlig v. Comm'r of Pub. Safety*, 379 N.W.2d 714, 715–16 (Minn. App. 1986) (concluding that sufficient evidence showed that officer had probable cause to believe that petitioner was driving while impaired where vehicle was stuck in snowbank, petitioner approached vehicle on foot, and petitioner admitted to driving vehicle when it became stuck); *Johnson*, 366 N.W.2d at 349–50 (concluding that district court erred in determining that officer lacked probable cause to believe that petitioner was driving while

impaired where officer found vehicle parked outside trailer from which petitioner was escorted and to which petitioner admitted he had driven vehicle to talk to trailer's owner).

Here, Officer Moonen testified on direct examination as follows:

> THE PROSECUTOR: Where were you when you made contact with [Raskovich]?
> THE OFFICER: In the parking lot of the salon.
> THE PROSECUTOR: Did you make any observations when you made contact with her?
> THE OFFICER: She—she was swaying when I talked to her; her speech was slurred; her eyes were bloodshot and watery; she seemed to be confused as to why I was talking with her.
> THE PROSECUTOR: Did you explain why you were talking to her?
> THE OFFICER: Yep. I asked her if she'd had anything to drink. She said she had a couple of drinks with lunch. And I asked her if she drove to the salon after lunch after having her drinks, and she said yes.
> . . . .
> THE PROSECUTOR: I'm sorry, you asked [Raskovich] if she had had drinks with lunch, and then if she drove after lunch?
> THE OFFICER: I said, "How did you get to the salon? Did you drive here?" And she said, "Yes."
> THE PROSECUTOR: Did you confirm that she drove to the salon after lunch?
> THE OFFICER: Yes.
> . . . .
> THE PROSECUTOR: Did you ask [Raskovich] if she had anything to drink since she drove to the salon?
> THE OFFICER: Yes.
> THE PROSECTUOR: Did she respond?
> THE OFFICER: She said, "Of course not."

And on cross-examination, Officer Moonen testified that she had located in the salon's parking lot a parked vehicle with which Raskovich was associated.

The district court determined that Officer Moonen's testimony was credible. "Deference must be given to the district court's credibility determinations." *Hoekstra v.*

*Comm'r of Pub. Safety*, 839 N.W.2d 536, 539 (Minn. App. 2013) (quotation omitted). We conclude that the facts and circumstances known to Officer Moonen, as described in her credible testimony at the implied-consent hearing, would warrant a prudent person to believe that Raskovich was driving a vehicle while impaired; that testimony therefore is sufficient evidence on which to base a denial of Raskovich's implied-consent petition.

Finally, Raskovich argues that the district court erred by concluding that the warrantless search of her urine was constitutional, citing our recent opinion in *State v. Thompson*, 873 N.W.2d 873 (Minn. App. 2015), *review granted* (Minn. Feb. 24, 2016). In that case, we held that "[t]he test-refusal statute violates appellant's right to substantive due process under the United States and Minnesota Constitutions by criminalizing his refusal to submit to a warrantless blood or urine test." *Thompson*, 873 N.W.2d at 880. Yet Raskovich did not refuse to submit to a warrantless blood or urine test; instead, she expressly *agreed* to submit to a warrantless urine test.

Raskovich's argument on this issue is underdeveloped; presumably, she takes the position that her consent to chemical testing was coerced by the state. The supreme court has held that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *State v. Brooks*, 838 N.W.2d 563, 570 (Minn. 2013). Instead, the voluntariness of a defendant's consent to chemical testing is assessed under "the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 569 (quotation omitted). After its analysis of the totality of the circumstances, the supreme court concluded that "Brooks explicitly and voluntarily consented to [tests of

7

his blood and urine]," reasoning that "Brooks was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody," that "Brooks consulted with counsel before agreeing to take each test," and that "by reading Brooks the implied consent advisory police made clear to him that he had a choice of whether to submit to testing." *Id.* at 565, 571–73.

Here, as in *Brooks*, Raskovich was read the implied-consent advisory and spoke with an attorney before being asked whether she would take a urine test. Raskovich does not assert, and nothing in the record suggests, that she was subjected to repeated police questioning or days in custody before being asked whether she would take a urine test. As in *Brooks*, the totality of the circumstances indicates that Raskovich's consent to chemical testing was voluntary, and the district court's voluntary-consent finding is not clearly erroneous. *See State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011) (stating that "[t]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact," and that "the 'clearly erroneous' standard controls [an appellate court's] review of a district court's finding of voluntary consent." (quotation omitted)). We therefore conclude that the district court did not err by concluding that the warrantless search of Raskovich's urine was constitutional. *See id.* at 568 ("Taking blood and urine samples from someone constitutes a 'search' under the Fourth Amendment. But police do not need a warrant if the subject of the search consents." (citation omitted)).

**Affirmed.**

8