**Mark Alan OVERLINE,
Petitioner, Appellant,**

v.

**STATE of Minnesota, COMMISSIONER
OF PUBLIC SAFETY, Respondent.**

No. C2–86–1938.

Court of Appeals of Minnesota.

May 19, 1987.

James H. Leviton, Minneapolis, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Lawrence M. Schultz, Mary Magnuson, Asst. Attys. Gen., St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

SEDGWICK, Judge.

Mark Alan Overline was arrested for driving while under the influence and his driver's license was revoked for refusing testing pursuant to the implied consent law, Minn.Stat. § 169.123. The trial court sustained the revocation. We affirm.

## FACTS

At 9:33 p.m. State Trooper Gerald William Trott received an accident report. He arrived at the scene less than three minutes later and saw a Ford pickup truck resting against some trees on the south side of Highway 23. The driver was not present. The vehicle was registered to two persons, one of whom was appellant Overline.

Deputy Schultz of the Kanabec County Sheriff's office also arrived on the scene. Trott asked him to investigate at the Tower Superette, located less than one block away, to determine whether anyone had been there to report the accident. The superette was the only public building nearby which was open. Schultz did so and was advised by the clerk that within the last ten minutes, a man made a telephone call to the Howards' residence and requested a ride. The man appeared intoxicated and had blood on his hands.

Trott and Schultz obtained the Howards' address and proceeded separately to the residence. Trott left within ten minutes of his arrival at the accident scene. Upon arriving at the Howards' residence, Trott saw three people in the kitchen, two elderly persons and appellant. As they approached the house, Trott saw appellant leave the room hurriedly.

Trott knocked on the door; Mrs. Howard answered. She invited the officer into the house and asked what he wanted. The officer said he was looking for Mark. He then proceeded down the hall into an adjoining room where appellant was standing with his back to the wall as if hiding.

Trott observed that appellant was obviously intoxicated, and saw blood on his hand. When asked if he was Mark Overline, appellant responded, "What do you want?" and "How do you know my pickup wasn't stolen?"

The officer remarked that the Howards could be in trouble for harboring a fugitive. Prior to making that remark, no limitations were placed on the officer, nor was there objection to his further entry into the home.

Trott advised appellant of his implied consent rights. Appellant refused testing and his license was revoked. Upon judicial review, the trial court concluded that the officer had reasonable cause to believe appellant was driving the pickup truck while under the influence, that appellant lacked standing to object to any invasion of privacy of the Howards' home, that the search of the Howards' home for appellant was not unreasonable, and that the arrest of appellant was legal. It sustained revocation of appellant's driving privileges.

## ISSUES

1. Did the officer have probable cause to believe appellant was driving the motor vehicle while under the influence?

2. Did appellant have standing to challenge the officer's warrantless entry of the Howards' residence where appellant was a visitor?

3. Was the trooper's warrantless entry of the residence lawful?

## ANALYSIS

■ 1. The implied consent law can be invoked when the officer has probable cause to believe the person was driving, operating, or in physical control of the mo-

tor vehicle while under the influence. Minn.Stat. § 169.123, subd. 2(a) (Supp. 1985). Probable cause exists when there are facts and circumstances known to the officer which warrant a prudent person to believe the person was driving while under the influence. *State v. Harris*, 295 Minn. 38, 42, 202 N.W.2d 878, 881 (1972). Probable cause must be evaluated from the point of view of a prudent and cautious police officer. *State v. Harris*, 265 Minn. 260, 264, 121 N.W.2d 327, 331, *cert. denied*, 375 U.S. 867, 84 S.Ct. 141, 11 L.Ed.2d 94 (1963); *Johnson v. Commissioner of Public Safety*, 366 N.W.2d 347, 350 (Minn.Ct.App. 1985). The totality of the circumstances must be examined. *Eggersgluss v. Commissioner of Public Safety*, 393 N.W.2d 183, 185 (Minn.1986).

■ We agree with the trial court that the facts and circumstances known to the officer provided probable cause to believe appellant had driven the vehicle while under the influence. The truck ran off the highway into some trees, and was damaged. No one was in or around the truck when the trooper arrived. The truck was registered to two owners, one of whom was appellant. Officer Schultz, after arriving on the scene, learned that 10 minutes earlier, an intoxicated man with an injured hand entered a nearby superette and called the Howards for a ride. Within 10 minutes of arriving at the scene, Trott left for the Howards' residence and upon arrival he was invited into the home by Mrs. Howard. The trooper found appellant in a bedroom with his back to the wall as if hiding and observed him to be obviously intoxicated. Appellant voluntarily asked, "How do you know my pickup wasn't stolen?" The trooper also observed blood on appellant's hand.

■ The court found all three persons were extremely intoxicated, and that appellant appeared more intoxicated than he could have become by drinking between the apparent time of the accident and the trooper's arrival at the Howards' residence. The court stated, "[I]t is obvious to this Court that the accident had occurred shortly before the telephone call to the Howard residence and the temporal connection has been established." It is not necessary that the officer observe the actual driving conduct. All that is required to make an arrest for DWI is probable cause to believe a violation of Minn.Stat. § 169.121, subd. 1, occurred. Minn.Stat. § 169.121, subd. 1a. The facts in this case were sufficient to provide the officer with probable cause to believe appellant had been driving the vehicle while under the influence.

2. Appellant argues that the fourth amendment prohibited the police officer's warrantless entry into the Howards' home. The trial court determined that appellant had no standing to raise this issue, because he had no proprietary interest in the premises, and had not asserted any reason for an expectation of privacy in the house, except to rely on the rights of the Howards.

■ Fourth amendment rights are personal rights which may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 425–26, 58 L.Ed.2d 387 (1978). Only a defendant whose fourth amendment rights have been violated may be protected by the exclusionary rule. *Id.* at 134, 99 S.Ct. at 426. The question of whether a person is legitimately on the premises is too broad to measure fourth amendment rights. *Id.* at 142, 99 S.Ct. at 429–30. Instead, the question is whether the person has a legitimate expectation of privacy in the invaded place and can claim fourth amendment protection, even though the interest may not be a recognizable property interest at common law. *Id.* at 143, 99 S.Ct. at 430. Consequently, a court may not exclude evidence under the fourth amendment unless an unlawful search or seizure violates the defendant's own rights. *United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980); *see also State v. Houston*, 359 N.W.2d 336, 337–38 (Minn.Ct.App.1984).

■ Here, appellant was on the premises as a guest of the Howards and had no proprietary interest in the premises. One does not need a property interest in order to have a legitimate expectation of privacy. *See State v. Kumpula*, 355 N.W.2d 697,

701 (Minn.1984); *Houston,* 359 N.W.2d at 338.

In 4 W. LaFave, *Search and Seizure* § 11.3(b) (2d ed. 1987), the author addresses whether persons lawfully present on residential premises, although not a tenant or owner, may have standing in regard to a fourth amendment violation. The author analyzed this issue in light of *Rakas* and concluded:

> if the police, without required notice or without probable cause or without a required search warrant, burst into B's home and disrupt a dinner party at which A is present as a guest, then certainly A should be deemed to have standing to object—just as passengers in a car may object to its illegal stopping. Dinner guest A has had *his* freedom, privacy and solitude intruded upon by the police, and thus he has standing to object to that encroachment upon *his* rights * * *. On the other hand, it is fully consistent with the *Rakas* reasoning and result to say that if the intrusion itself was lawful, then A's lawful presence would not alone give him standing as to any subsequent illegalities which did not increase appreciably the interference with A's personal freedom.

> \*   \*   \*   \*   \*   \*

> A person who is a visitor in the residence of another certainly shares with the resident a justified expectation of privacy in that place against any unlawful police entry of that place which intrudes upon his solitude, privacy and freedom. An entry without the requisite type of warrant made for the purpose of arresting the visitor is obviously such an intrusion.

*Id.* at 295–96, 298 (footnotes omitted).

In *State v. Ritchie,* 379 N.W.2d 550, 552–53 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Feb. 14, 1986), this court addressed the issue of whether a person had standing to contest the stop of a vehicle in which he was a passenger. After considering *Rakas,* this court found that the passenger had protectible fourth amendment interest in not being stopped unless the stop could be justified in accord with constitutional standards. Similarly, under these facts, appellant, a guest in the Howards' home,

had a "legitimate expectation of privacy" in the home. He is therefore entitled to raise the claim that his fourth amendment rights were violated by the warrantless entry by the police into the Howards' home.

■ 3. Having concluded that appellant may raise a fourth amendment argument, the next issue is whether the police entry into the Howards' residence was illegal. The police may not make a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest. *Payton v. New York,* 445 U.S. 573, 576, 100 S.Ct. 1371, 1375, 63 L.Ed.2d 639 (1980). The legality of the entry here is based on the trial court's determination that Mrs. Howard invited the officer into her home, consenting to the entry. *See Welsh v. Wisconsin,* 466 U.S. 740, 755 n. 15, 104 S.Ct. 2091, 2100 n. 15, 80 L.Ed.2d 732 (1984).

This court has addressed the issue of whether a consent was valid in a recent case, *Pesterfield v. Commissioner of Public Safety,* 399 N.W.2d 605 (Minn.Ct.App. 1987). In that case we noted:

> A valid and voluntary consent to enter may be followed by a warrantless in-home arrest. *United States v. Briley,* 726 F.2d 1301, 1303 (8th Cir.1984). A consent is valid if it is given voluntarily and without coercion. *Id.* at 1304. Mere acquiescence on a claim of police authority or submission in the face of force is not sufficient. *State v. Howard,* 373 N.W.2d 596, 599 (Minn.1985). The voluntary nature of a consent is a question of fact to be determined from all the circumstances, *Schneckloth v. Bustamonte,* 412 U.S. 218, 227 [93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854] * * * (1973), and the government has the burden of showing the consent was given freely. *Bumper v. North Carolina,* 391 U.S. 543, 548 [88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797] * * * (1968). While the subject's knowledge of her right to refuse is a factor, establishing such knowledge is not a prerequisite to finding voluntary consent. *State v. Hanley,* 363 N.W.2d 735, 739 (Minn.1985).

*Id.* at 609.

■ Here, the trial court found that the officer made some remarks to the effect

that the Howards could be in trouble for harboring a fugitive. It further found that prior to making such remarks, Mrs. Howard invited the officer into the house, and that no limitations were placed on the officer nor any objection made to his further entry into the home. The court found incredible Mrs. Howard's claim that she did not object or place limitations on the officer's movements because she was intimidated by his statements.

The facts of this case are remarkably similar to those in *State v. Powell*, 357 N.W.2d 146 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Jan. 15, 1985). There, police received permission from defendant's mother to enter the home and question him with respect to a traffic offense. When the officer observed a person he believed to be defendant duck into a dark family room on the lower level, he followed him by flashlight into the room where defendant was found lying under a pool table. This court found that the mother did not limit her consent and the subsequent search was reasonable and not unduly intrusive. *Id.* at 149.

In the present case, the trial court's finding that Mrs. Howard consented to entry was not clearly erroneous, and the limited search for Overline was neither objected to nor unreasonable.

## DECISION

The trial court's order sustaining the revocation of appellant's driving privileges is affirmed.

Affirmed.