**STATE of Minnesota, Respondent,**

v.

**Peter Dean PAUL, Appellant.**

**No. C2–94–2469.**

Court of Appeals of Minnesota.

Sept. 5, 1995.

Review Granted Oct. 27, 1995.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Lisa A. Skoog, Patrick Ciliberto, Scott Joint Prosecution Ass'n, Shakopee, Steven L. Bergeson, Jordan City Atty., Jordan, for respondent.

Richard L. Swanson, Chaska, for appellant.

Considered and decided by NORTON, P.J., and HUSPENI and FOLEY,* JJ.

## OPINION

NORTON, Judge.

This case arises from the warrantless entry into appellant Peter Dean Paul's home to arrest him for driving while under the influence of alcohol. After an Omnibus hearing, the trial court found that the warrantless entry and arrest did not violate the Fourth Amendment to the United States Constitution or article I of the Minnesota Constitution, because the crime was committed in the officer's presence. Paul then waived his right to a jury trial, entered a conditional guilty plea pursuant to *State v. Lothenbach*, 296 N.W.2d 854, 857 (1980), and brought this appeal. We affirm.

## FACTS

Appellant Peter Dean Paul approached Officer Joseph Andrew Gunderson at a NAPA Auto Parts store, wrapped his arm around Gunderson's shoulder, and began talking to him. Gunderson was in uniform and was on duty. He noticed a strong odor of alcohol on Paul's breath and observed that Paul had slow and slurred speech, watery and glassy eyes, and a flushed face. When he released

his grip on Gunderson, Paul stumbled backward and leaned on the counter.

Gunderson later observed Paul driving out of the parking lot and rolling through a stop sign. Because there were other cars leaving from an adjacent lot, Gunderson could not immediately pull behind Paul. Gunderson caught up to Paul at Highway 169 and Creek Lane, where Paul rolled through another stop sign and turned north on Highway 169. Gunderson observed Paul's truck fishtail as Paul turned onto Highway 169. Paul drove a relatively short distance at a "fast" speed and then turned onto Syndicate. Gunderson followed Paul for approximately two blocks with his red squad lights on before Paul turned into a residential driveway.

Gunderson pulled in behind Paul's truck, bumper to bumper. Gunderson testified that when Paul exited the truck, Gunderson commanded him to stop. Paul looked at Gunderson, shut the door to his truck, and turned away. Gunderson left the side of his squad car and ran toward Paul, again commanding him to stop. Paul quickly entered the attached garage by a side door. When Gunderson reached the door, it was locked; he then knocked on the door and shouted. Paul did not respond.

Gunderson went to the front door of the residence and knocked. Paul's wife answered the door and explained that the truck belonged to her husband. The record contains conflicting testimony concerning what happened next. Gunderson testified that Paul's wife left him at the open front door while she looked for her husband. He heard voices, but when Paul's wife came back to the door, she said that Paul was not home. Gunderson advised her that if she were lying to conceal the presence of someone, she "could" be charged with a crime. He explained that someone must be there, because he had just followed someone driving the truck into the driveway, and the person had run into the attached garage and locked the door behind him. He asked Paul's wife if she would let

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

him come in and look for himself; she agreed and told him to "go ahead."

Gunderson searched in the kitchen and attached garage, but did not find anyone. Subsequently, Paul came up from the basement on his own accord. Gunderson then arrested Paul for driving under the influence of alcohol, pursuant to Minn.Stat. § 169.121 (Supp.1993).

Paul's wife had a different version of events. She testified that she heard something slam, she went to a window, she saw Paul's truck in the driveway, and, she noticed Gunderson's squad car pulling to a stop behind it. The squad car lights were not flashing. She went to the front door, opened it, and observed Gunderson trying to open the garage door. She explained that when Gunderson then came to the front door and asked her to go look for Paul, she shut the door, leaving Gunderson standing outside, and looked throughout the house, calling Paul's name. When she went back toward the front door, she found Gunderson standing in the living room.

### ISSUE

Was the warrantless in-home arrest of appellant lawful?

### ANALYSIS

The trial court here did not reject the testimony of Officer Gunderson. Under these circumstances, we review the trial court's decision regarding a motion to suppress evidence on constitutional grounds by analyzing the testimony of the officer to determine if, as a matter of law, the cases permit what the officer did. *State v. Storvick,* 428 N.W.2d 55, 58 n. 1 (Minn.1988).

Under the Fourth Amendment to the United States Constitution and article I of the Minnesota Constitution, warrantless searches are per se unreasonable, subject to a few exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). "Courts are particularly reluctant to find exceptions to this rule in the context of a warrantless search or seizure in a home." *State v. Othoudt,* 482 N.W.2d 218, 222 (Minn.1992).

Absent consent or exigent circumstances, a police officer may not make a warrantless entry into a home to make an arrest. *State v. Koziol,* 338 N.W.2d 47, 48 (Minn.1983) (citing *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). Here, the arrest involves exigent circumstances of "hot pursuit." When an officer has set a warrantless arrest in motion in a public place, a person may not defeat that arrest by escaping to a private place. *United States v. Santana,* 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976). In other words, when an officer is in "hot pursuit," the officer need not obtain a warrant before entering a home that a fleeing suspect has entered. *Id., cited in Koziol,* 338 N.W.2d at 48.

### 1. Severity of the offense.

Paul contends that hot pursuit to arrest for an offense less than a felony is not an exigent circumstance that justifies the state's warrantless entry into a home. Here, the officer was in hot pursuit to arrest Paul for the misdemeanor traffic offense of driving under the influence (DWI). Minn.Stat. § 169.121, subd. 3(b) (Supp.1993).

The supreme court and this court have previously upheld warrantless, hot pursuit, in-home arrests of individuals upon probable cause when they committed less than felony-level offenses. *See Koziol,* 338 N.W.2d at 47–48 (gross misdemeanor fleeing police officer after officer stopped defendant to warn him of speeding); *Pahlen v. Commissioner of Pub. Safety,* 382 N.W.2d 552, 553–54 (Minn.App.1986) (hot pursuit after arresting officer observed defendant committing petty misdemeanor traffic offense of speeding).

Paul contends that the supreme court's later decision in *Othoudt,* 482 N.W.2d at 223–24, effectively overruled the decisions in *Koziol* and *Pahlen.* We disagree. We recognize that the supreme court in *Othoudt* stated that neither the U.S. nor the Minnesota Supreme Court had ever held that exigent circumstances would "permit a warrantless entry into a home to arrest for an offense of lesser magnitude than a felony." *Id.* But

we must view this statement in its proper context. Unlike this case, the police officer in *Othoudt* did not observe the offense and was not in "hot pursuit" when he entered Othoudt's home. *See id.* at 224 (finding officer's warrantless entry into home "was not justified by consent, emergency, or probable cause and exigent circumstances"). Instead, the officer was responding to directions of the sheriff's office dispatcher directing him and an ambulance to go to the Othoudt residence to investigate a car accident. *Id.* at 221. The statement in *Othoudt,* upon which Paul relies, thus reflects the rule that an officer may not make a warrantless entry into a home to arrest for a misdemeanor offense unless the individual committed the offense in the officer's presence. *See* Minn. Stat. § 629.34, subd. 1(c)(1), (d) (Supp.1993) (providing that police officer may, without warrant, arrest person in his/her home for a misdemeanor committed or attempted in the officer's presence). Because Gunderson observed the offense here, *Othoudt* does not apply.

Paul next argues that *Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984), directs a conclusion that exigent circumstances may not justify the warrantless entry and arrest in his home. We disagree. Although the Supreme Court determined that the warrantless entry and arrest of Welsh for DWI violated his constitutional rights, there are several factors that distinguish this case from *Welsh.*

The Supreme Court held in *Welsh* that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." *Id.* Significantly, the Wisconsin statute applied in *Welsh* did not impose a criminal sanction for Welsh's DWI, but instead made Welsh subject only to a civil forfeiture proceeding. *Id.* at 746, 104 S.Ct. at 2095–96. The Supreme Court determined that, given the state of Wisconsin's "expression of interest" (making the offense civil, rather than criminal), Welsh's warrantless arrest "cannot be upheld simply because evidence of the petitioner's blood-alcohol level might have dissipated while the police obtained a warrant." *Id.* at 754, 104 S.Ct. at

2100. By contrast, the DWI here is a criminal offense under Minnesota law. Minn.Stat. § 169.121, subd. 3 (detailing the "criminal penalties" for gross misdemeanor and misdemeanor DWI violations). Thus, the criminal sanction provided by Minnesota is an expression of greater state interest than the civil sanction in *Welsh.* We hold that *Welsh* does not preclude a warrantless entry to arrest for DWI here where Minnesota has provided criminal sanctions for this offense.

*Welsh* also is distinguishable because the arresting officer in that case did not observe the offense and was not in "hot pursuit" of Welsh; instead, the officer entered Welsh's home to arrest him based upon a report from a bystander. *Id.* at 742–43, 104 S.Ct. at 2094. Here, Officer Gunderson had observed the offenses, had initiated the arrest action, and was pursuing Paul when Paul escaped into his home to avoid arrest.

Finally, hot pursuit is distinct from other exigent circumstances, because it involves an arrest in progress. Regardless of the severity level of the criminal offense, the law does not allow an individual to avoid a lawful warrantless arrest merely by outrunning the police and seeking harbor in his/her home. *See Koziol,* 338 N.W.2d at 48 ("person may not defeat a warrantless arrest which has been set in motion in public by entering into his dwelling"; affirming conviction for gross misdemeanor). Statutory law specifically authorizes the manner of arrest here. *See* Minn.Stat. §§ 629.34, subd. 1(c)(1) (officer may arrest person without warrant for misdemeanor committed in officer's presence); 629.34, subd. 1(d) (officer making arrest for misdemeanor committed in officer's presence "may break open an outer or inner door or window of a dwelling house if, after notice of office and purpose, the officer * * * is refused admittance"); *see also* Minn.Stat. § 169.121, subd. 1b (1992) (officer may lawfully arrest person for driving under the influence "without a warrant upon probable cause, without regard to whether the violation was committed in the officer's presence").

We hold that it is appropriate to apply the doctrine of hot pursuit to justify a warrantless in-home arrest for a misdemean-

or traffic offense committed in the presence of the arresting officer.

## 2. Probable cause.

■ Paul contends that the first criterion for a warrantless in-home arrest, probable cause to arrest him, was not present here. We disagree. Probable cause to arrest for driving while under the influence exists "when there are facts and circumstances known to the officer which would warrant a prudent person to believe the person was driving while under the influence." *Overline v. State*, 406 N.W.2d 23, 26 (Minn.App.1987) (citing *State v. Harris*, 295 Minn. 38, 42, 202 N.W.2d 878, 881 (1972)).

■ Here, Officer ·Gunderson smelled alcohol on Paul's breath and observed that Paul spoke with slow and slurred speech, had watery and glassy eyes and a flushed face, and was unsteady on his feet when he encountered Paul at the NAPA store. These indicia of intoxication, coupled with Paul's driving misconduct after he left the NAPA store, provided Gunderson with probable cause to believe that Paul was driving under the influence of alcohol.

## 3. Arrest in progress.

■ Paul also contends that Gunderson was not in hot pursuit of him. We disagree. The short span of the pursuit here is not a determining factor. In *Santana*, the Supreme Court stated:

> "hot pursuit" means some sort of a chase, but it need not be an extended hue and cry "in and about [the] public streets." The fact that the pursuit here ended almost as soon as it began did not render it any the less a "hot pursuit" sufficient to justify the warrantless entry into Santana's house.

*Santana*, 427 U.S. at 43, 96 S.Ct. at 2410. The pursuit in *Santana* began when the officers parked at Santana's home, exited their van, shouted "police," and displayed their identification to Santana, who was standing in the threshold of her home. *Id.* at 40, 96 S.Ct. at 2408.

■ The pursuit here is factually similar to *Pahlen*, 382 N.W.2d at 553. There, the officer had pursued Pahlen for about one mile and turned on his flashing lights when Pahlen braked to turn into his driveway. *Id.* Pahlen ran from his car toward his home, turned to look in the direction of a spotlight the officer shone on him, and then went into his home. *Id.* The officer, who had been pursuing Pahlen for speeding, followed him into his home seconds later, discovered he was intoxicated, and arrested him for DWI. *Id.* We held that "[t]he officer's warrantless, nonconsensual, unannounced entry into [Pahlen's] home and subsequent arrest of [him] was justified by the exigent circumstance of hot pursuit." *Id.* at 554.

Here, Officer Gunderson testified that he turned his flashing lights on at least two blocks from Paul's home. When Paul turned into his driveway and parked his truck, Gunderson ordered him to stay in the vehicle. Instead, Paul got out of his vehicle and quickly went toward his garage. When Gunderson again ordered Paul to stop, a Fourth Amendment seizure occurred, suggesting that an arrest was in progress. *See In re Welfare of E.D.J.,* 502 N.W.2d 779, 783 (Minn.1993) (holding that seizure occurred when police directed individual to stop). Paul entered the garage through a side door, which he locked behind him. Upon finding that the door was locked, Gunderson went to the front door and knocked. By knocking on the door, Gunderson provided an opportunity for an entry into the home without force or damage. The insignificant amount of time taken to knock and wait for an answer does not change the fact that Gunderson was in hot pursuit of Paul.

The record supports the trial court's finding that an arrest was in progress and that Gunderson was in hot pursuit when he entered Paul's home. Further, because the facts set forth by the trial court demonstrate that Paul was aware that Gunderson was pursuing him before he entered his house, the pursuit here, coupled with the presence of probable cause, justified a warrantless entry into Paul's home. *Cf. Pahlen*, 382 N.W.2d at 554 (reversing trial court and holding that hot pursuit justified warrantless entry where individual looked in officer's direction before fleeing into his home); *see also Ker v. California*, 374 U.S. 23, 40–41, 83

S.Ct. 1623, 1633–34, 10 L.Ed.2d 726 (1963) (evidence showed defendant was eluding police before arriving home; it was not unlawful for police to make unannounced entry into home to make arrest when person within already knew of officer's authority and purpose for entry).

### 4. Consent.

 Finally, the state argues that Paul's wife consented to Gunderson's entry. A warrantless arrest may follow consent to enter even though exigent circumstances are not present. *State v. Howard,* 373 N.W.2d 596, 599 (Minn.1985). We note that the trial court found that Paul's wife "allowed Officer Gunderson to enter the home to look for [Paul]," but the trial court did not further develop this issue. Paul contends that Gunderson coerced his wife to allow him to enter. There is conflicting evidence on this issue. We note that Gunderson's remarks that Paul's wife might be charged with obstruction of justice if she was lying about Paul not being in the house would not necessarily render her consent invalid. *Cf. Overline,* 406 N.W.2d at 27–28 (affirming finding of consent even though officer had made remarks that the person providing consent to enter "could be in trouble for harboring a fugitive"). Because the trial court did not develop the issue of consent, but instead based its analysis and decision on the issue of hot pursuit, we affirm on the basis of hot pursuit and do not decide whether a consent to enter was present here.

### DECISION

The trial court did not err in determining that the officer's warrantless entry into appellant's home to arrest him for a misdemeanor DWI was justified by the exigent circumstance of hot pursuit.

**Affirmed.**