**STATE of Minnesota, Respondent,**

v.

**Wayne Thomas CARTER, Appellant.**

**No. CX–95–1368.**

Court of Appeals of Minnesota.

April 9, 1996.

Hubert H. Humphrey, III, Attorney General, St. Paul, James C. Backstrom, Dakota County Attorney, Phillip D. Prokopowicz, Assistant County Attorney, Hastings, for Respondent.

John M. Stuart, State Public Defender, Scott G. Swanson, Assistant State Public Defender, Minneapolis, for Appellant.

Considered and decided by PARKER, P.J., and SCHUMACHER and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Appellant Wayne Thomas Carter, who was arrested after a visual search through an apartment window, challenges the legality of the search. He also challenges imposition of the presumptive sentence. We affirm.

## FACTS

On May 15, 1994, a citizen told Police Officer Jim Thielen (officer) that there was drug activity in a nearby apartment. This informant told the officer that, while walking past a garden-level apartment window, he saw people packaging a white powder in plastic bags. The informant also told the officer that there was a blue four-door Cadillac with Illinois license plates nearby that possibly belonged to the people in the apartment.

After talking to the informant, the officer proceeded to the apartment building and, while standing on the front lawn, approximately 12–18 inches from a garden-level window, looked through a gap in the window blinds. He saw three people—two males and a female—working at a kitchen table. The males were putting small amounts of white powder into plastic bags, which the female then cut off for sealing. The officer observed

the three people for 15 minutes, during which time they filled five or six bags.

The officer then contacted a South Metro Drug Task Force officer, who applied for a search warrant for both the car and the apartment. The suspects' car left the premises and the police arrested its occupants before the search warrant was obtained. The officer recognized appellant Wayne Carter, the car's driver, and Melvin Johns, the car's passenger, as the two males he had seen in the apartment.

Police seized an automatic pistol (which was in plain view) from the passenger-side floor. When they later received and executed the search warrant for the car, the police recovered a black leather bag containing 47.1 grams of cocaine packaged in plastic bags, along with pagers and a scale.

Carter was found guilty, on stipulated facts, of conspiracy to commit a controlled substance crime in the first degree in violation of Minn.Stat. §§ 152.021, subd. 1(1), and 609.05 (1992) (count I), and controlled substance crime in the first degree (aiding and abetting) under Minn.Stat. §§ 152.021, subd. 2(1), and 609.05 (1992) (count II).

Carter was sentenced (only on count I) to the presumptive guidelines sentence of 86 months in prison. He now appeals, challenging the legality of the search and the failure to depart downward from the presumptive sentence.

## ISSUES

I. Does Carter have standing to object to the officer's visual search?

II. Did the court err in failing to depart downward from the presumptive sentence?

## ANALYSIS

### I. Standing

■ As a threshold matter, the trial court ruled that Carter, as a short-duration caller, had no standing to object to the officer's peering into the apartment window. Carter disagrees and argues that his status, which he claims was as an "invited houseguest," is one to which society is willing to give an "expectation of privacy" and Fourth Amendment protection. On these stipulated facts, this presents a question of law, which we review de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

[C]apacity to claim the protection of the Fourth Amendment depends \* \* \* upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.

*Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978) (citing *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967)). A subjective expectation of privacy is legitimate if it is "one that society is prepared to recognize as 'reasonable.'" *Katz,* 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring).

■ As support for their respective conclusions, Carter and the state (as did the trial court) cite *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). In *Olson,* the police made a warrantless, nonconsensual entry into a house and arrested Olson. *Id.* at 93–94, 110 S.Ct. at 1686–87. The United States Supreme Court, in affirming the Minnesota Supreme Court, held that *Olson,* as an overnight houseguest, had a reasonable expectation of privacy in the house protected by the Fourth Amendment. *Id.* at 96–97, 110 S.Ct. at 1688. Carter argues that the *Olson* holding applies to him.

The trial court stated that Carter presented no evidence—other than that he was an out-of-state resident—to show that his status created a reasonable expectation of privacy. We agree with the trial court's assessment.

*Olson* suggests that staying overnight in another's home is indicative of a sufficient "presence." Carter presents no evidence he was an overnight guest, and the suggestion that Carter may raise Fourth Amendment objections to a search of the premises solely because he was legitimately on the premises has been rejected as "too broad a gauge for measurement of Fourth Amendment rights." *Rakas,* 439 U.S. at 142, 99 S.Ct. at 429. The "legitimate expectation of privacy" standard requires a stronger presence than mere legitimate presence.

*Overline v. State, Comm'r of Pub. Safety,* 406 N.W.2d 23 (Minn.App.1987), shows that an overnight stay is not necessarily required for standing. In *Overline,* an intoxicated man ran his truck off the highway into some trees, injuring his hand. *Id.* at 25. The man telephoned friends for a ride, they presumably complied, and shortly thereafter police entered the friends' home without a warrant and found the man. *Id.* This court held that the intoxicated man had a "legitimate expectation of privacy" in the home and therefore was entitled to raise a claim that the police violated his Fourth Amendment rights by entering the home without a warrant. *Id.* at 27. No Fourth Amendment violation was found, however. *Id.* at 28.

Carter's presence here falls short of that in *Overline,* just as it falls short of *Olson.* Contrary to *Overline,* Carter's claim that he was predominantly a social guest in the apartment is inconsistent with the only evidence concerning his stay in the apartment, which indicates that he used it for a business purpose—to package drugs. This defeats the "legitimate expectation of privacy" standard, which requires "more than a subjective expectation of not being discovered." *Rakas,* 439 U.S. at 143 n. 12, 99 S.Ct. at 430 n. 12. Carter's "presence" at the apartment was thus insufficient to give him standing. We affirm the trial court's conclusion that Carter lacks standing to object to the officer's observation of activities inside the apartment.

Having concluded that Carter lacks standing to object to the search, we do not reach his claim that the police search violated his Fourth Amendment right to be free from unreasonable searches.

## II. Sentence

Carter claims that the court abused its discretion in sentencing him to the 86–month presumptive term. The supreme court has stated the applicable standard of review for a refusal to depart:

> [W]e do not intend entirely to close the door on appeals from refusals to depart [from the presumptive sentence]. However, we believe that it would be a rare case which would warrant reversal of the refusal to depart. * * * [T]he Guidelines state that when substantial and compelling circumstances are present, the judge "may" depart. This means that the *trial court has broad discretion* and that we generally will not interfere with the exercise of that discretion.

*State v. Kindem,* 313 N.W.2d 6, 7 (Minn. 1981) (emphasis added) (citation omitted). A sentencing judge may depart from the sentencing guidelines if "substantial grounds exist which tend to excuse or mitigate the offender's culpability, although not amounting to a defense." Minn. Sent. Guidelines II.D.2.a.(5).

■ Carter contends that three factors constitute "substantial grounds" tending to excuse or mitigate his culpability: (1) he has no criminal history; (2) he has succeeded at a number of endeavors (business and personal); and (3) the probation officer recommended a short prison term because he believed that Carter does not appear to be a risk to the community. We disagree that these grounds require departure.

■ Carter's lack of a prior criminal history is not a mitigating factor, but rather is considered in the sentencing guidelines grid. *Cf. State v. Brusven,* 327 N.W.2d 591, 593 (Minn.1982) (because criminal history is considered in determining presumptive sentence, "it generally would be unfair to consider [it] again" as support for departure). Nor are social factors, such as employment history or educational attainment, qualifying factors. Minn. Sent. Guidelines II.D.1.c., d. Finally, a downward departure recommendation in a pre-sentence investigation report is not a delineated factor justifying a departure, and even if it were, the existence of a mitigating factor does "not obligate the court" to grant a downward departure. *State v. Wall,* 343 N.W.2d 22, 25 (Minn.1984).

We recognize "the growing body of evidence relating to '[t]he disparity of sentencing between people of color and whites.'" *State v. Williams,* 525 N.W.2d 538, 549 (Minn.1994). However, the sentencing court's reasons for declining to depart dispositionally—including Carter's failure to acknowledge the extent of his involvement in cocaine distribution and the amount of drugs

confiscated—supports the court's refusal to depart. The court acted within its discretion.

## DECISION

As a short-term business caller, appellant lacks standing to object to a search of the apartment. The court did not abuse its discretion in sentencing appellant to the presumptive term.

**Affirmed.**