[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Sean Dolan, appeals from a decision of the defendant, Commissioner of the State of Connecticut Department of Motor Vehicles ("DMV"), suspending his motor vehicle operator's license for a period of six months. The DMV acted pursuant to General Statutes § 14-227b on the basis that the plaintiff refused to submit to a chemical test of the alcohol content of his blood after having been arrested on a charge of driving while under the influence of alcohol. The plaintiff appeals pursuant to the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§ 4-166 et seq. and 4-183. The court finds the issues for the defendant DMV.
On February 5, 1999, the plaintiff was observed by Officer CT Page 10164 Gibbs of the Orange Police Department operating his motor vehicle in an erratic fashion west bound on 1-95 in New Haven, Connecticut. Officer Gibbs, who was off duty at the time and in his personal vehicle, first observed the plaintiff at 23:46 hours on February 5, 1999. The plaintiff was operating a black Buick station wagon, Connecticut registration No. 326 BDA which swerved from the left lane to the center lane of the highway nearly colliding with another vehicle which was forced to maneuver to avoid the collision. In the vicinity of Exit 42 of 1-95, the plaintiffs vehicle was observed to swerve across all three lanes of traffic into the break down lane and, once again, nearly colliding with another motor vehicle. Officer Gibbs telephoned the Connecticut State Police dispatcher and followed the plaintiffs vehicle as it exited the highway at Exit 41 and turned left on Marsh Hill Road. Officer Gibbs continued to follow the Buick and observed it cross a clearly visible center line and drive southbound in the northbound lane in Orange, Connecticut. The Buick continued to drive erratically, ignoring state traffic control signs. The Buick was observed proceeding southbound on Anderson Avenue and turning left onto New Haven Avenue, eventually turning onto Grove Street where it was then parked.[1] Officer Gibbs also parked his vehicle and awaited the arrival of marked police units. Officer Rudd of the Orange Police Department was the first uniformed officer to arrive on the scene. The plaintiff was crouched near the front of his vehicle when Officer Rudd approached him in the dark. Dolan came up and began to run around the fence toward Rudd who confronted the plaintiff yelling "Police, stop!" Officer Gibbs joined in the pursuit yelling "Police, show your hands!" Dolan ran by Officer Rudd towards the residence, which was eventually determined to be the residence of the plaintiff. At this time, the police officers were not aware that this was Dolan's residence. The plaintiff kept his hands out of sight in front of him as he entered the porch and tried to enter the house. Officer Rudd pursued the plaintiff, grabbed the back of his sweater and spun him around, placing him into a prone position on the porch. The plaintiff would not cooperate and kept his hands underneath him, necessitating the police to handcuff him for safety reasons. The officers at this time observed Dolan's slurred speech and the strong odor of alcohol emanating from his breath.
The plaintiffs residence was located at 4 Grove Street, Milford, Connecticut. Milford Police Officers Demirjian and Wissner arrived on the scene. The Orange police officers reported the activities to the Milford police officers, including their CT Page 10165 suspicions concerning the plaintiffs alcohol consumption. Police Lieutenant shift commanders also arrived on the scene and a Milford police officer was directed to administer roadside field sobriety tests to Dolan. The handcuffs were removed from Dolan and he cooperated with the field sobriety tests. Dolan, who is a high school graduate, was unable to recite the alphabet beyond the letter H. Dolan was unable to satisfactorily perform the walk-and-turn test, the one-legged stand, finger-to-nose and horizontal gaze nystagmus test. At 1:30 a.m. on February 6, 1999, the plaintiff was placed under arrest by Milford police officers for operating under the influence in violation of General Statutes § 14-227a. The plaintiff was advised of his "Miranda" rights and afforded the opportunity to contact an attorney. Dolan contacted an attorney and refused to take a breath test of his blood alcohol content.
The plaintiff was afforded a hearing at the Department of Motor Vehicles on March 3, 1999. At the hearing, Officer Flaherty, of the West Haven Police Department testified along with the plaintiff. Officer Flaherty had also responded to the incident in the early morning hours of February 6, 1999 which resulted in the plaintiffs arrest. Officer Flaherty and the plaintiff both testified concerning the porch area where Dolan was apprehended.
In his brief, the plaintiff raises three issues: (1) that the plaintiff was arrested unlawfully in that it was a warrantless entry into his home for a misdemeanor arrest; (2) that there was no probable cause to. arrest at the time the plaintiff was handcuffed; and (3) that the arrest was illegal because it was beyond the jurisdiction of the Orange police officers.
The record was filed on April 12, 1999. The plaintiffs brief was filed May 3, 1999, the defendant's brief on June 3, 1999 and the parties were heard in oral argument on June 7, 1999. During oral argument the court afforded the parties an additional opportunity to brief the issue of whether the exclusionary rule applied to administrative hearings. The supplemental briefs were filed by the plaintiff on June 25, 1999 and the defendant on June 28, 1999. In addition to the testimony, the record included the A-44 report and attached narrative.
The Connecticut Appellate and Supreme Courts have not addressed the issue of the application of the exclusionary rule to administrative hearings. The majority rule, however, is that CT Page 10166 the exclusionary rule is not applicable to civil proceedings. SeeUnited States v. Janis, 428 U.S. 433, 447, 96 S.Ct. 3021,49 L.Ed.2d 1046 (1976) ("In the complex and turbulent history of the [exclusionary] rule, the court never has applied it to exclude evidence from a civil proceeding, federal or state.")
The exclusionary rule is a judicially created remedy designed to safeguard Fourth Amendment rights. Its primary purpose is to deter unlawful police conduct. "As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served."United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613,38 L.Ed.2d 561 (1974).
The only civil context in which the Supreme Court has applied the exclusionary rule is a case of a "quasi-criminal" forfeiture proceeding based on criminal conduct. One 1958 Plymouth Sedan v.Commonwealth of Pennsylvania, 380 U.S. 693, 700-02, 85 5. Ct. 1246, 14 L.Ed.2d 170 (1965). The Supreme Court has held the exclusionary rule specifically inapplicable to a civil federal deportation proceeding. Immigration Naturalization Service v.Lopez-Mendoza, 468 U.S. 1032, 1041-42, 104 S.Ct. 3479, 3484-85,82 L.Ed.2d 778 (1984).
In United States v. Janis, supra, 428 U.S. 433, the Supreme Court adopted a balancing test weighing the likely social benefits of excluding evidence flowing from an unlawful seizure against the likely costs and benefits of using such evidence in a civil proceeding. Id., 446-48. The federal policy was reaffirmed in Pennsylvania Board of Probation and Parole v. Scott,524 U.S. 357, 118 S.Ct. 2014. 141 L.Ed.2d 344 (1998). In that decision, the exclusionary rule was found inapplicable in a parole revocation proceeding, with the court specifically noting its repeated refusal to extend the ruling to proceedings other than criminal trials. Id., 2019.
Connecticut has also held that the exclusionary rule is not applicable to a probation revocation hearing. Payne v. Robinson,207 Conn. 565, 570, cert. denied, 488 U.S. 898, 109 S.Ct. 242
(1988).
In applying just such a balancing test the Supreme Judicial Court of Maine concluded that the exclusionary rule should not be applied in an administrative license suspension hearing for a motor vehicle operator whose license was suspended for operating CT Page 10167 under the influence of alcohol. The exclusion of the evidence from the administrative hearing as well as the criminal proceeding would add little deterrent effect to police conduct; however, the cost to society resulting from excluding the evidence would be substantial. The danger posed by persons operating motor vehicles while intoxicated to the public raises an important public policy concern. Powell v. Secretary of State,614 A.2d 1303 (Me. 1992).
The Iowa Supreme Court reached a similar decision involving a drunken driver license revocation proceeding in Westendorf v.Iowa Department of Transportation, 400 N.W.2d 553 (Iowa 1987).[2] The Iowa court also concluded that the improbable deterrent effect of applying the rule in license revocation proceeding when weighed against the loss of reliable and relevant proof and the high priority given to enforcement of laws prohibiting drunken driving necessitated a finding that the exclusionary rule was inapplicable to the license revocation proceedings. The Missouri Court of Appeals in Green v. Directorof Revenue, 745 S.W.2d 818 (Mo.App. 1988) also found the exclusionary rule inapplicable to civil driver's license revocation proceedings. The Missouri Appellate Court was persuaded by the logic of the Westendorf analysis. In two Connecticut Superior Court decisions, the judge also refused to apply the exclusionary rule to motor vehicle administrative license suspension proceedings. See Papa v. Department of MotorVehicles, Superior Court, judicial district of Tolland at Rockville, Docket No. 044456 (October 16, 1991, Smith, J);Scranton v. Department of Motor Vehicles, Superior Court, judicial district of Tolland at Rockville, Docket No. 044545 (October 15, 1991, Smith, J.) (6 C.S.C.R. 982).
In State v. Hickam, 235 Conn. 614, cert. denied,116 S.Ct. 1851, 134 L.Ed.2d 951 (1995), the principle purpose of §14-227b was found to be the removal of dangerous drivers from the road with all dispatch compatible with due process.
The language of the administrative license suspension hearing statute would also support the conclusion that the exclusionary rule was inapplicable. "The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such CT Page 10168 person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis . . . and (4) was such person operating the motor vehicle." General Statutes § 14-227b(g). Our courts have consistently held that such hearings were limited to the four issues set forth in § 14-227b(g). Buckley v. Muzio,200 Conn. 1, 7 (1986); Volck v. Muzio, 204 Conn. 507, 511-12 (1987).
The plaintiff alternatively argues that the suspension for a refusal to submit to a blood alcohol cannot be found because the underlying arrest was not lawful. See Welsh v. Wisconsin,466 U.S. 740, 104 S.Ct. 291, 80 L.Ed.2d 732 (1984), citing Scales v.State, 64 Wis.2d 485, 494, 219 N.W.2d 286, 292 (1974) (where the Supreme Court found that a lawful arrest must be made prior to a submission to a test under Wisconsins implied consent law.)
Assuming that the validity of the arrest would be at issue[3], the arrest was valid under the exigent circumstances "hot pursuit" exception to the fourth amendment warrant requirement. United States v. Santana, 427 U.S. 38, 42-43,96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); Warden, Maryland Penitentiaryv. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 18 L.Ed.2d 782
(1967). In the operating under the influence context, "hot pursuit" warrantless arrests in the home were recognized inWinter v. State, 902 S.W.2d 571 (Texas App. 1995) and State v.Paul, 536 N.W.2d 649 (1995), aff'd, 548 N.W.2d 260 (1996).
Welsh v. Wisconsin, supra, 466 U.S. 470, which the plaintiff relies on is clearly distinguishable on its facts. In Welsh, there was no immediate or continuous pursuit of the petitioner from the scene of the crime. Welsh v. Wisconsin, supra, 753. The petitioner in Welsh was in his second floor bedroom when confronted by the police who had not been following him to his residence. Also, in weighing "exigent circumstances," the Supreme Court ruled: "The State of Wisconsin has chosen to classify the first offense for driving while intoxicated as a noncriminal, civil forfeiture offense for which no imprisonment is possible." Id., 754. Unlike the State of Wisconsin, Connecticut provides for incarceration on a first conviction. General Statutes § 14-227a.
In the present case, the plaintiff was continuously followed by a police officer and immediately pursued by officers onto his porch. The police, in view of the erratic operation of his vehicle, had not only an articulable suspicion to stop him, but CT Page 10169 probable cause to arrest him for his traffic violations. Accordingly, the arrest was valid.
Applying the facts of this case to the four issues set forth in § 14-227b(g), the court upholds the suspension decision of the defendant Commissioner. The facts supporting the probable cause determination by the Milford police officers would include the report of erratic operation by Dolan from the Orange police officers, the odor of alcohol emanating from Dolan's breath, his poor performance on field sobriety tests and difficulty in standing. It is not disputed that Dolan was placed under arrest by the Milford police officers for operating under the influence. The refusal to submit to blood alcohol tests was witnessed by two police officers as evidenced by the A-44 report, and is not disputed by the plaintiff. The plaintiff was apparently the only occupant of the motor vehicle and was observed by an off duty Orange police officer to be operating the vehicle.
The plaintiff questions the jurisdiction of the arresting officers in his brief. His argument, however, is addressed to the Orange police officers, not the Milford police officers who arrested him for the § 14-227a violation.
General Statutes § 54-1f does not mandate that the Orange police officers were to return Dolan to Orange before turning him over to the Milford police. See Crest Pontiac Cadillac, Inc. v.Hadley, 239 Conn. 437, 446 (1996). The Milford officers arrested the plaintiff in Milford for his operation in Milford.
The decision of the Commissioner of the Department of Motor Vehicles is affirmed and the appeal is dismissed.
Robert F. McWeeny, J.