STATE of Minnesota, Respondent,

v.

Gasford Uriah ROBINSON, a.k.a.
Winston Anthony Charles,
Appellant.

No. C7–89–1836.

Court of Appeals of Minnesota.

July 31, 1990.

Review Denied Sept. 14, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Lisa A. Berg, Asst. County Atty., Minneapolis, for respondent.

Barry V. Voss, Frederick J. Goetz, Minneapolis, for appellant.

## OPINION

FOLEY, Judge.

This appeal is from a conviction obtained with evidence appellant Gasford Uriah Robinson, a.k.a. Winston Anthony Charles, argues should have been suppressed. He

challenges the trial court finding that he lacked standing to object to a search of a car. We affirm.

## FACTS

### Procedural History

The briefs filed with this court indicate that after a suppression hearing Robinson negotiated a reduced charge upon which he was thereafter tried and convicted before another judge. The district court file contains a judgment which refers to a conviction on July 7, 1989 of the charge "as amended." The judgment, however, then proceeds to detail the same charge initially filed against Robinson, possession of cocaine with intent to distribute. We are at a loss to understand what was meant by the reference to a negotiation of a reduced charge when the judgment reflects the charge was not reduced. There is no order or verdict form in the district court file signed by the trial court judge, nor are there any findings made by him.

It has been represented to this court that the case was tried to the court on stipulated facts, but there is no stipulation in the district court file and no stipulation was furnished to this court. Nor is there a stipulation preserving the suppression issues on appeal.

Why such a sparse district court file has been furnished to this court on appeal has not been explained. The file at least should have contained some writing or order of the trial court dispositive of the trial on the merits. An appellate court should not have to search through a trial court file, sparse as it is, to try to sort out the trial court proceedings.

Lacking a transcript of evidence received at the trial or a written stipulation of facts, we have before us only the suppression hearing evidence and the issues raised at the suppression hearing. Thus, we address ourselves only to the questions raised in that hearing.

### The Suppression Hearing

At the suppression hearing, evidence was received indicating that on November 18, 1988 at 8 p.m. Robinson was driving a car down Minnehaha Parkway. Two park police officers observed Robinson driving 15 to 20 miles per hour over the posted speed limit. They then saw him nearly have a head-on collision with another car when he passed a car in his lane of traffic. The police put on their flashing lights and had Robinson pull over.

One of the officers approached the driver's side of the car and asked for Robinson's license. Robinson handed the officer his license through the open car window. While the officer did not smell alcohol, he noticed Robinson's eyes were glassy.

Robinson asked why he had been stopped. The officer said Robinson was speeding, driving carelessly and had almost hit another car. The officer testified Robinson mumbled back that he disagreed.

The car's engine was still running and the radio was playing loudly. The officer asked Robinson to turn off the car and turn down the radio. Robinson hesitated, and looked down. The car was then turned off.

The officer testified that he thought Robinson was intoxicated and therefore asked Robinson to get out of the car. Robinson did not move. The car door was opened, and the officer stood inside the door next to Robinson. Robinson continued to sit in the car.

The officer shone his flashlight into the car and saw a purple velvet bag sticking out from under the seat between Robinson's feet. The officer recognized it as the kind of bag sold with Crown Royal whiskey. The officer asked Robinson if the bag contained "booze." Robinson did not reply. The officer started to bend down toward the bag at the same time Robinson tried to shove the bag under a newspaper under the seat.

The officer testified Robinson then came out of the car, making a swinging motion from under the seat. Robinson had an object in his hand. The officer testified he perceived Robinson's action to be an assault. The officer blocked Robinson's arm and hit Robinson with his flashlight. A struggle ensued, and Robinson was forced to the ground, handcuffed and placed un-

der arrest. Robinson claimed the officer struck him without provocation.

A search of Robinson's person turned up $2,700 in cash. The purple bag was later found in the area. It contained three ounces of cocaine. A search of the car trunk prior to impoundment produced a bag of money, about $80,000 worth. The money was hidden under the spare tire and was not in plain view when the trunk was opened.

Robinson testified he was returning the car to the owner. He said he had arranged for someone named Paul to test drive the car, and had been asked by the owner, named Henry, to retrieve the car because Paul had had it too long.

Robinson could not remember Henry's last name, and did not know if Paul was a first or last name. Nor could he remember Henry's address. Evidence was later admitted showing the address on Robinson's driver's license to be the same as Henry's address.

Robinson denied that either the cocaine or the $80,000 belonged to him. Robinson also gave no explanation as to how the purple bag ended up outside the car.

Jeffrey Anderson also testified at the suppression hearing. Anderson testified that he co-owned the car with Henry Stewart. Anderson said he had given Robinson permission to test drive the car and had left the keys in the car for that purpose. Anderson said Stewart knew about the arrangement for Robinson to test drive the car. Anderson said no one named Paul had permission to drive the car.

After the suppression hearing, the trial court found the stop was valid, which Robinson concedes. The trial court concluded, however, that the search of Robinson and the car was illegal. The trial court suppressed the evidence of the money found on Robinson. The state does not appeal that holding.

As to the cocaine and $80,000 found in the car trunk, the trial court found them to be the fruit of an illegal search, but held Robinson did not have "standing" to object to the search under the fourth amendment.

The trial court made the following finding:

> Mr. Anderson's testimony directly contradicts [Mr. Robinson's] testimony as to the transaction involving the [car]. The Court finds that Mr. Anderson's testimony regarding his relationship to Mr. Robinson lacks credibility and this Court rejects his testimony as it relates to his granting permission to Mr. Robinson to test drive said vehicle.
>
> Based on [Mr. Robinson's] testimony, the Court finds that [Mr. Robinson] had no possessory interest in the vehicle. Consequently, he has no standing to contest the legality of the search and seizure of items from said [car].

## ISSUES

1. Did the trial court err in finding Robinson did not have "standing" to object to a search of the car?

2. Was the search illegal?

## ANALYSIS

■■■ 1. The trial court framed this issue in terms of "standing." The correct analysis, however, is not that of traditional standing principles, but, rather, "focuses on the extent of a particular defendant's rights under the Fourth Amendment." *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). A defendant may not vicariously assert fourth amendment rights; they are personal. *Id.* at 133–34, 99 S.Ct. at 424–26. Furthermore, it is the burden of the party seeking suppression to show *his* fourth amendment rights were violated, that he had a personal and legitimate expectation of privacy and that the search was illegal. *Rakas*, 439 U.S. at 130 n. 1, 99 S.Ct. at 424 n. 1; *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *State v. Ritchie*, 379 N.W.2d 550, 552 (Minn.App.1985), *pet. for rev. denied* (Minn. Feb. 14, 1986). A charge of possession no longer gives a defendant "automatic standing." *United States v. Salvucci*, 448 U.S. 83, 86, 93, 100 S.Ct. 2547, 2550, 2553, 65 L.Ed.2d 619 (1980) (overruling the automatic standing rule of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 78 L.Ed.2d 233 (1960)).

The trial court found the testimony of Anderson lacked credibility. We will not disturb that credibility finding. We are left, therefore, with Robinson's testimony. Based on his testimony, we find Robinson did not meet his burden of proof that he had a personal reasonable expectation of privacy in the car.

It was not clearly erroneous for the trial court to find Robinson did not have a possessory interest in the car. According to Robinson's testimony, his driving of the car was a single-instance use of the car. He was not using the car for his own purposes, but was transporting the car to the owner. Furthermore, Robinson eschewed any possessory interest in the items seized, and made no claim that he had any possessions of his own in the car. There is simply no basis upon which Robinson can support a claim he had a reasonable expectation of privacy in the car.

2. Even if it could be said Robinson had a privacy interest, we do not find the search of the car to be illegal. The observation of glassy eyes, Robinson's unresponsive behavior and Robinson's dangerous driving, even absent the odor of alcohol, gave the officer an adequate basis to check the purple liquor bag "in plain sight." Additionally, after finding the cocaine in the bag, the officers then had probable cause to search the trunk. *State v. Bigelow*, 451 N.W.2d 311, 312–13 (Minn. 1990).

Although the state has not appealed the trial court's finding that the search of Robinson's person was illegal, we note we do not believe it was illegal. Given Robinson's conduct in assaulting the officer, the officer was justified in searching Robinson's person.

### DECISION

Affirmed.

RANDALL, Judge, concurring specially.

I concur in the result.