**STATE of Minnesota, Appellant,**

v.

**Terry REYNOLDS, Respondent.**

**No. C7–97–2045.**

Court of Appeals of Minnesota.

May 5, 1998.

Hubert H. Humphrey III, Attorney General, and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, for appellant.

William E. McGee, Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, for respondent.

Considered and decided by TOUSSAINT, C.J., and FOLEY* and MANSUR,** JJ.

## OPINION

DANIEL F. FOLEY, Judge.

The state appeals from a pretrial order denying its motion for reconsideration of an order suppressing evidence in the prosecution of respondent for a first-degree controlled substance offense. We reverse.

## FACTS

Respondent Terry Reynolds is charged with two counts of first-degree controlled substance offense for a September 2, 1997 abortive drug transaction he had arranged with a confidential reliable informant (CRI) and an undercover officer. Reynolds met the CRI and undercover officer in south Minneapolis, then said he had instructions to meet his source at 34th and Blaisdell. The arrangement was for a possible sale of nine ounces of cocaine for $9,000.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

** Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. Art. VI, § 10.

The three drove to 34th and Blaisdell and Reynolds went into a nearby apartment building while the CRI and undercover officer waited outside. Reynolds appeared after about 30–45 minutes, accompanied by another man, later identified as his co-defendant John Brown. As the two men approached, the CRI was concerned that Brown might be armed, so the undercover officer called for backup and set an arrest in motion. Reynolds and Brown ran but were captured a short distance away. Neither man had any drugs or weapons in his possession.

Police returned to the apartment building where they learned that Brown lived in Apartment 105. After knocking on the door without any response, the officers broke it down and conducted a "protective sweep" to prevent destruction of any evidence while they sought a search warrant. Inside the apartment, they found 771 grams of cocaine on a table in the bedroom, and another 1115 grams in an open safe in the bedroom closet. The trial court ruled that the initial search was unconstitutional and suppressed the cocaine seized from the apartment in the prosecution of both Brown and Reynolds. The state brought a motion for reconsideration, requesting the court to reconsider, among other issues, whether Reynolds had standing to object to the search of Brown's apartment. The trial court denied the motion for reconsideration.

## ISSUE

Did the trial court clearly err in ruling that respondent had "standing" to challenge the search?

## ANALYSIS

■ To prevail in a pretrial appeal, the state must show clearly and unequivocally that the trial court erred in its judgment and that the error will have a critical impact on the outcome of trial. *State v. Kim,* 398 N.W.2d 544, 547 (Minn.1987). Because the trial court suppressed the cocaine upon which the charges against respondent are based, we need not further discuss the "critical impact" standard.

■ A defendant who seeks the suppression of evidence may not assert the violation of the Fourth Amendment rights of a third party but must allege some violation of his own rights. *State v. Carter,* 569 N.W.2d 169, 174 (Minn.1997), *cert. granted,* —— U.S. ——, 118 S.Ct. 1183, 140 L.Ed.2d 315 (1998). In order to have Fourth Amendment "standing," therefore, a defendant must show the search or seizure infringed upon the defendant's own legitimate expectation of privacy. *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). The United States Supreme Court has recognized that even social guests may have a reasonable expectation of privacy in the premises they are visiting. *Minnesota v. Olson,* 495 U.S. 91, 96–97, 110 S.Ct. 1684, 1688, 109 L.Ed.2d 85 (1990).

■ Respondent argues that the state has waived its challenge to his standing by failing to raise the issue at the *Rasmussen* hearing, and only briefly raising the issue in its post-hearing memorandum. Respondent acknowledges that a defendant bears the burden of establishing a violation of his personal Fourth Amendment rights. *See Rakas,* 439 U.S. at 130 n. 1, 99 S.Ct. at 424 n. 1 (defendants had burden of showing standing and prosecutor's argument on lack of standing gave defendants notice that they were being put to their burden of proof); *State v. Robinson,* 458 N.W.2d 421, 423–24 (Minn.App.1990) (defendant did not meet burden of showing he had personal reasonable expectation of privacy in car searched), *review denied,* (Minn. Sept. 14, 1990). Moreover, at the joint omnibus hearing the state had to respond to the claims of both respondent and Brown. We conclude that the issue of standing was adequately presented to the trial court. The state has not waived its claim that respondent lacks standing.

■ In *Carter,* the supreme court held that the defendant, who had been allowed into the apartment of another in order to package cocaine, had standing to challenge the police search, which consisted of stepping inside the curtilage and peeping in the apartment window. *Carter,* 569 N.W.2d. at 175–77. The court recognized in *Carter* that standing extends beyond overnight guests:

> But a closer reading of *Olson* reveals that the Supreme Court does not require a person to establish his or her status as either a guest or overnight guest before

that person can prove a legitimate expectation of privacy in a location that is searched. Instead, the person must establish only that under the totality of the circumstances, the person's subjective expectation was the type of expectation that "society is prepared to recognize as 'reasonable.'"

*Id.* at 175.

 The state argues that respondent cannot have standing because, unlike the defendant in *Carter,* he was not present during the police search he challenges. But standing may be based also on a person's long-term connection to the premises, or his storing personal property on the premises. 5 Wayne R. LaFave, *Search & Seizure,* § 11.3(c) (3d ed.1996). In such cases, it is not necessary to have been present at the time of the search. *Id.; cf. United States v. Davis,* 103 F.3d 660, 671–72 (8th Cir.1996) (conceding defendant could have standing to contest search at girlfriend's apartment if he had property there, but finding he did not).

There is no evidence here that respondent had a long-term connection to Brown's apartment, or that he had stored any personal property on the premises. From all that appears in the record, respondent may have only been in the apartment briefly to arrange the abortive drug deal. At most, he was familiar with the apartment as his dealer's base of operations. Even assuming the continued validity of *Carter,* this was not sufficient to confer standing. Respondent had no reasonable expectation of privacy in Brown's apartment.

 Respondent asks this court, as an alternative to affirming the trial court's ruling based on existing law, to recognize "automatic" standing, formerly the rule in federal law, as a matter of state constitutional law. The "automatic" standing rule applied to defendants charged with possessory offenses. *See Jones v. United States,* 362 U.S. 257, 264–65, 80 S.Ct. 725, 732–33, 4 L.Ed.2d 697 (1960) (defendant is person aggrieved by search and seizure where indictment charges possession), *overruled, United States v. Salvucci,* 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980). Respondent is charged with a "sale" of cocaine and conspiracy to sell. Although one of the definitions of

"sale" is possession with intent to sell, the complaint only alleges that respondent agreed to sell (an alternative definition of "sale"). *See* Minn.Stat. § 152.01, subd. 15a (1996) (definitions of "sell"). It is highly unlikely the state will attempt to prove that respondent was in possession of the cocaine in Brown's apartment when it has abundant evidence that respondent had entered into an agreement to sell cocaine to the CRI and undercover officer. Even if respondent could show a basis for this court to interpret our state constitution more expansively than the federal constitution, his offense does not fit within his proposed "automatic" standing rule.

### DECISION

Respondent does not have standing to challenge the search of his dealer's apartment. Therefore, the trial court clearly erred in suppressing the cocaine in this prosecution.

**Reversed.**