**STATE of Minnesota, Respondent,**

v.

**Brandon Nathaniel SLETTEN, Appellant.**

No. C0–02–1500.

Court of Appeals of Minnesota.

July 3, 2003.

---

Mike Hatch, Attorney General, St. Paul, and Doug Johnson, Washington County Attorney, Michael C. Hutchinson, Assistant County Attorney, Stillwater, for respondent.

Daniel S. Adkins, Richard A. Sand, Richard Sand & Associates, St. Paul, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge, WILLIS, Judge, and HUDSON, Judge.

## OPINION

HUDSON, Judge.

Appellant challenges his conviction for second-degree controlled substance crime. Specifically, he contests the district court's finding that he lacked standing to challenge the warrantless entry of police/law enforcement personnel into a hotel room

where appellant was located and where controlled substances were recovered. Appellant further claims that the state waived the issue of standing or, in the alternative, that he has "automatic standing" under Article I, Section 10 of the Minnesota Constitution because he was charged with a possessory offense.

First, we conclude that the state adequately preserved the issue of standing and that appellant waived the issue of "automatic standing." Second, based on Minnesota law at the time of the district court's ruling, the district court properly determined that appellant did not have a reasonable expectation of privacy, and he could not, therefore, challenge the search under the Fourth Amendment of the United States Constitution or the Minnesota Constitution. Third, we address the Minnesota Supreme Court's recent decision in *In re Welfare of B.R.K.*, 658 N.W.2d 565 (Minn.2003), where the court held that a short-term social guest in a home had a reasonable expectation of privacy sufficient to challenge a warrantless search of that home. We conclude, however, that the facts here are more similar to those in *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), and hold that appellant was not a short-term social guest; rather, he was on the premises for the purpose of conducting business transactions. Accordingly, even under *B.R.K.*, appellant did not have a reasonable expectation of privacy under the Fourth Amendment of the United States Constitution or the Minnesota Constitution to challenge the search of the hotel room, and we affirm the district court's order in its entirety, including appellant's conviction.

# FACTS

On November 27, 2000, officers from the Minnesota Department of Corrections Fugitive Apprehension Unit and other law enforcement personnel searched several rooms at the Country Inn & Suites in Forest Lake, Minnesota, for a parole violator. The hotel desk attendant told the officers that room 235 was experiencing heavy foot traffic, and that a man resembling the suspect had been seen visiting the room. Based on this information, officers approached the door and knocked. The man who answered immediately tried to slam the door shut, and officers heard someone yell from inside the room, "It's the cops!" The officers forced their way into the room after one of the officers saw a man inside who resembled the suspect. As it turned out, the man was appellant, not the parole violator. Officers, however, observed appellant throw a baggie of what appeared to be marijuana to the floor. While the officers were in the hotel room, appellant's cell phone rang. An officer answered it without identifying himself as law enforcement, but appellant yelled in the background "Police. Police. It's the cops."

During the subsequent search, officers seized approximately eight grams of a substance containing methamphetamine in individually-packaged containers, four grams of what appeared to be marijuana, two marijuana pipes, a butane torch, a digital scale, a cell phone, a date book, and $850 in cash.[1] Appellant and two others who were in the room were arrested. Upon questioning, each of the three men admitted that none had planned to spend the night in the hotel room, and that a woman from Wisconsin had rented the room for them in her name. She was not present

---

1. While the record indicates there were several pieces of luggage in the hotel room, it is unclear to whom they belonged. At oral argument, appellant's counsel claimed that the luggage belonged to appellant.

and they were unsure of her whereabouts. Co-defendant Christopher Hudella told one of the officers he went to room 235 to "get high" and did so after he received a "freebie" of methamphetamine from appellant, as Hudella had done earlier in the week. Officers verified that a woman named Bobbi Jo Denver had rented the room. Appellant was searched incident to his arrest and had two room cards in his pocket, but neither opened room 235.[2]

The state charged appellant with second-degree controlled substance crime, in violation of Minn.Stat. § 152.022, subds. 1(1) and 3 (2000). The district court granted appellant's motion to suppress the methamphetamine and drug paraphernalia obtained from the hotel room, and dismissed the complaint. The district court found that the search was unreasonable and in violation of the Fourth Amendment because the officers did not have sufficient probable cause or the requisite exigent circumstances to justify warrantless entry into the hotel room. The state appealed, based on the district court's failure to make a finding as to appellant's standing and expectation of privacy in the hotel room. Although the state raised the issue of appellant's standing for the first time in its post-omnibus memorandum, this court concluded that the state sufficiently preserved the issue for appellate review, and that the district court erred by failing to make proper findings on the issue of appellant's standing. *State v. Sletten*, No. C3-01-184, 2001 WL 641740, at *2-*3 (Minn.App. June 12, 2001). This court remanded the case for the district court to make those findings. *Id.*

On remand, the district court held an evidentiary hearing. Contrary to his statement on the night he was arrested,

appellant testified that he did intend to spend the night in the hotel room with his friend Josh. Appellant could not remember Josh's last name, but he stated that Josh was Denver's boyfriend. At oral argument, appellant's counsel claimed that appellant did not want to be associated with the methamphetamine or drug paraphernalia found in the hotel room, so he did not reveal his true intentions at the time of his arrest. The district court found that appellant's testimony lacked credibility, particularly in light of the state's rebuttal testimony that appellant told officers on the night that he was arrested that he did not plan to spend the night in room 235. The district court concluded that appellant lacked standing to challenge the search of the hotel room. This appeal followed.

## ISSUES

I. Did the state adequately preserve the issue of standing?

II. Did appellant waive the issue of "automatic standing?"

III. Did the district court properly determine that appellant had no reasonable expectation of privacy in the hotel room and therefore could not claim the protection of the Fourth Amendment to challenge the search of the room?

## ANALYSIS

### I

 In his brief, appellant contends that, notwithstanding this court's earlier decision in *State v. Sletten*, No. C3-01-184, 2001 WL 641740 (Minn.App. June 12, 2001), the state waived the standing issue by failing to raise it at the omnibus hear-

---

**2.** Investigators also learned that the three men had rented other rooms at Country Inn & Suites earlier in the week, thus explaining the two "blank" room cards in appellant's possession at the time of his arrest.

ing before the district court. As a threshold matter, in subsequent appeals, when litigating substantially similar issues, parties are bound by the "law of the case." *See, e.g., State v. Bentley,* 231 Minn. 531, 540–41, 45 N.W.2d 185, 191 (1950) (holding "law of the case" prevented re-examination of court's earlier decision involving same legislative authority, same flood control project, same action of executive council, and same constitutional right to damages); *State v. Harrington,* 504 N.W.2d 500, 503 (Minn.App.1993) (holding appellants precluded from attacking validity of restraining order on appeal because of failure to appeal validity of order which now stood as "law of the case"), *review denied* (Minn. Sept. 30, 1993). At oral argument, appellant's counsel conceded that this court's previous holding regarding the state's preservation of the standing issue is the law of the case, and he is bound by it. *Sletten,* 2001 WL 641740, at *2.

## II

 Appellant contends that because he was charged with a possessory offense, he has "automatic standing"[3] under Article I, Section 10, of the Minnesota Constitution to challenge the search. He further claims that the "automatic standing" issue has not been resolved by Minnesota courts and this court should take the opportunity to do so here. It is true that this court did not reach the "automatic standing" issue in two recent cases. *See, e.g., State v. Wilson,* 594 N.W.2d 268, 271 (Minn.App.1999) (declining to consider "automatic standing" argument for failure to raise it before district court), *review denied* (Minn. Aug. 18, 1999); *State v. Reynolds,* 578 N.W.2d 762, 765 (Minn.App.1998) (declining to consider

"automatic standing" because on facts of case defendant did not possess cocaine, thus making the question moot). But in *State v. Robinson,* 458 N.W.2d 421, 423 (Minn.App.1990), *review denied* (Minn. Sept. 14, 1990), we held that "[a] charge of possession no longer gives a defendant 'automatic standing' " (citations omitted). In any event, because appellant did not raise this issue before the district court, he did not preserve the issue for consideration on appeal. Therefore, we decline to reach the issue on the merits.

## III

Appellant also argues that he was an overnight guest in the hotel room and had a reasonable expectation of privacy in the room sufficient to challenge the warrantless entry and search. Additionally, appellant contends that even as a mere social guest, he was legitimately on the premises and had the requisite reasonable expectation of privacy to invoke the protection of the Fourth Amendment. We disagree.

 The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he Fourth Amendment protects people, not places." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Thus, the Fourth Amendment is a personal right and an individual must invoke its protections. *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998). An individual may invoke the protection of the Fourth Amendment by showing

---

**3.** Prior to 1980, federal courts allowed a criminal defendant charged with a possessory offense "automatic standing." *See, e.g., Jones v. United States,* 362 U.S. 257, 264–65, 80 S.Ct. 725, 732–33, 4 L.Ed.2d 697 (1960)

(holding defendant charged with possession aggrieved by unlawful search and seizure). *Jones* was subsequently overruled by *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one that has "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."

*Carter,* 525 U.S. at 88, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (quoting *Rakas v. Illinois,* 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978)).

 While social guests may enjoy an expectation of privacy on the premises they are visiting under limited circumstances, business guests do not. *See, e.g., Carter,* 525 U.S. at 91, 119 S.Ct. at 474 (short-term business guest lacks legitimate expectation of privacy). Likewise, a guest who is merely permitted on the premises is not entitled to Fourth Amendment protection like an overnight guest, or like a guest with long-standing ties to the premises. *Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990) (overnight guest entitled to Fourth Amendment protection). *See, e.g., Carter,* 525 U.S. at 91, 119 S.Ct. at 473–74 (recognizing distinction between overnight guest and social guest "merely 'legitimately on the premises' "); *Reynolds,* 578 N.W.2d at 765 (standing of social guest also based on one's "long-term connection to the premises" or "storing personal property on the premises").

 While a hotel guest may be protected under the Fourth Amendment from unreasonable searches and seizures, that right is not absolute; a hotel guest must first show a legitimate privacy interest. *See, e.g., State v. Perkins,* 588 N.W.2d 491, 492 (Minn.1999) (holding Fourth Amendment protection not triggered unless aggrieved party demonstrates legitimate privacy interest).

 Finally, because the district court made findings of fact concerning appellant's standing, we must accept those factual findings unless clearly erroneous. *State v. Lindholm,* 557 N.W.2d 601, 602 (Minn.App.1996), *review denied* (Minn. Feb. 26, 1997). We do not conclude that a finding of fact is clearly erroneous when that finding is reasonably supported in the record. *State v. Danh,* 516 N.W.2d 539, 544 (Minn.1994). Finally, "[w]eighing the credibility of the witnesses is the exclusive province of the factfinder." *State v. Miranda,* 622 N.W.2d 353, 358 (Minn.App. 2001) (citation omitted).

### 1. Fourth Amendment Analysis Pre-*B.R.K.*

 First, we must determine whether appellant exhibited an actual subjective expectation of privacy in the hotel room and second, whether that expectation is reasonable. *See Katz,* 389 U.S. at 361, 88 S.Ct. at 507 (Harlan, J., concurring). Although the district court did not directly address this point, there is little doubt that appellant exhibited an actual subjective expectation of privacy in the hotel room. He was in a hotel room with the door closed and locked. He and the others attempted to keep the police out as they forced entry into the room. Based on these actions, we conclude that appellant demonstrated an actual subjective expectation of privacy in the hotel room.

 We next consider whether appellant's expectation of privacy is reasonable, i.e., one that is recognized by society. The district court found that appellant was not a registered occupant of room 235, and he did not intend to spend the night in that room. Co-defendant Hudella told investigators that he went to room 235 to get methamphetamine from appellant, as he had done earlier in the week. Based on these facts, the district court found that

appellant "was clearly using the room for the purpose of using and/or selling marijuana and methamphetamine." The district court specifically rejected appellant's claim that he planned to spend the night in room 235 with his friend Josh, whose last name he could not recall, and Josh's girlfriend. The district court concluded that appellant "did not have a reasonable expectation of privacy in the hotel suite and therefore has no standing to challenge the police entry into the room."

In affirming the district court's determination, we underscore the fact that while appellant may have legitimately been on the premises, as previously mentioned, he was not a registered guest in the hotel room. Denver had rented the room in her name, and neither of the room keys found in appellant's pocket opened room 235. "The question of whether a person is legitimately on the premises is too broad to measure fourth amendment rights." *Overline v. Comm'r of Pub. Safety*, 406 N.W.2d 23, 26 (Minn.App.1987). Rather, the focus is on whether the individual "can claim fourth amendment protection, even though the interest may not be a recognizable property interest at common law." *Id.* Appellant may have been a guest in room 235, but on this record, he has failed to demonstrate that he was the guest of Denver whose social relationship, if any, with appellant was not readily apparent from the record. Moreover, there is no evidence in the record that Denver gave appellant permission to stay in the room even as a social guest. To the extent appellant claims that he was Josh's guest, that claim is equally without merit since he did not even know Josh's last name. Notably, neither Josh nor Denver were present at the time of police entry to room 235.

We acknowledge that hotel guests are protected under the Fourth Amendment from unreasonable searches and seizures. But that right is not absolute and hotel guests must still show a legitimate privacy interest. *State v. Ward*, 580 N.W.2d 67, 70 (Minn.App. 1998). Here, appellant suggests he was a typical hotel guest. But common experience reveals that most hotel guests formally register and "check in" with the hotel and have operable keys to the room. Alternatively, if not registered in their own name, hotel guests generally can identify by name the persons with whom they are staying, or can demonstrate that they were invited to the room and have some cognizable relationship to the person who invited them. Like the defendant in *Carter*, appellant's relationship with his ostensible hosts—Denver and Josh—was extremely attenuated, and accordingly, he did not have a legitimate expectation of privacy.

Although there is some evidence in the record that appellant was using drugs as well as selling them, the record nevertheless supports the district court's finding that the main purpose for appellant's visit was to engage in drug transactions. Co-defendant Hudella reported to police that appellant cut and weighed the methamphetamine in the hotel room, and that he (Hudella) had received two "freebies" from appellant in three days' time. Moreover, while appellant had small amounts of controlled substances on his person, officers found a majority of the methamphetamine (8.3 grams) packaged individually for sale. Like the defendants in *Carter*, appellant had a "fleeting and insubstantial" connection to the hotel room which, from the record, was nothing more than a convenient processing station for the packaging and distribution of drugs. Thus, what little expectation of privacy he may have had was extinguished in light of the commercial nature of his visit. *See Carter*, 525 U.S. at 91, 119 S.Ct. at 474; *B.R.K.*, 658 N.W.2d at 575. At oral argu-

ment, appellant's counsel characterized appellant's presence in the hotel room as a "friendly" visit, in light of the fact that no money changed hands. But as the state correctly noted, the definition of "sell" within the meaning of Minn.Stat. § 152.01, subd. 15a (2000), does not require money to complete a transaction. *See id.* (defining "sell" as "to give away, barter, deliver, exchange, distribute, or dispose of to another * * *").

■ To date, engaging in commercial transactions involving brief visits to the premises is not a privacy interest society is prepared to recognize as reasonable or legitimate. *See, e.g., State v. Carter,* 596 N.W.2d 654, 656 (Minn.1999) (holding short-term business guests engaged in illegal drug transactions lack legitimate expectation of privacy). The district court's findings that appellant did not have a reasonable expectation of privacy in the hotel room and therefore had no standing to challenge the search are amply supported in the record and we will not disturb them.

### 2. Fourth Amendment Analysis Post-B.R.K.[4]

■ At oral argument, appellant's counsel contended that even if appellant was not an overnight guest, he is entitled to Fourth Amendment protection under the Supreme Court's recent decision in *B.R.K.* because he was legitimately on the premises as a short-term social guest. We reject this argument.

4. Neither the district court nor the parties addressed *B.R.K.* in the district court or in their appellate briefs, as *B.R.K.* was not decided until April 3, 2003, five days before oral arguments on this appeal.

5. In *Carter,* Justice Kennedy's concurrence described respondents' visit as follows:
 In this case respondents have established nothing more than a fleeting and insubstan-

In *B.R.K.,* the Supreme Court addressed the privacy interest of a short-term social guest in a private home. *B.R.K.,* 658 N.W.2d at 572–73. We recognize that the district court did not have the benefit of *B.R.K.* when it reached its decision. But we conclude that nothing in *B.R.K.* dictates a different result because the facts here are fundamentally different from those in *B.R.K.* Unlike B.R.K., appellant was not a short-term social guest with a reasonable expectation of privacy under the Fourth Amendment of the United States Constitution or the Minnesota Constitution.

■ We begin our analysis by noting that "[p]roperty used for commercial purposes is treated differently for Fourth Amendment purposes from residential property." *Minnesota v. Carter,* 525 U.S. 83, 90, 119 S.Ct. 469, 474, 142 L.Ed.2d 373 (1998). One holds a lesser expectation of privacy in commercial premises than in a home. *New York v. Burger,* 482 U.S. 691, 700, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987). In *Carter,* the seminal case in Minnesota, an Eagan police officer looked through a gap in closed window blinds to see defendants packaging cocaine in an apartment. *Carter,* 525 U.S. at 85, 119 S.Ct. at 471. The United States Supreme Court held that the defendants had no expectation of privacy because they "were obviously not overnight guests, but were essentially present for a business transaction and were only in the home for a matter of hours." *Id.* at 90, 119 S.Ct. at 473.[5] The Court explained that the

tial connection with Thompson's home. For all that appears in the record, respondents used Thompson's house simply as a convenient processing station, their purposes involving nothing more than the mechanical act of chopping and packaging a substance for distribution. There is no suggestion that respondents engaged in confidential communications with Thompson about their transaction. Respondents had

purely commercial nature of the transaction engaged in here, the relatively short period of time on the premises, and the lack of any previous connection between respondents and the householder, all lead us to conclude that respondents' situation is close to that of one simply permitted on the premises.

*Id.* at 91, 119 S.Ct. at 474.

In *B.R.K.*, the Minnesota Supreme Court held that a short-term social guest is entitled to Fourth Amendment protection when the two-part analysis set forth in *Katz* is satisfied: (1) an individual demonstrates an actual subjective expectation of privacy in the home; and (2) society is willing to recognize that expectation as reasonable. *B.R.K.* 658 N.W.2d at 571 (citing *Katz*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring)). B.R.K., a minor guest attending a party at a friend's house, hid in the basement when two sheriff's deputies arrived at the home to investigate a report of an underage drinking party. *Id.* at 568. The deputies entered the home through an unlocked door, without a warrant, and found B.R.K., the party's host B.A.O., and two other teenagers hiding behind the furnace. *Id.* When questioned by the deputies, B.R.K. admitted to consuming alcohol and tested positive for alcohol consumption. *Id.*

Following a trial, the district court found that B.R.K. lacked a reasonable expectation of privacy and did not have standing to challenge the warrantless entry or search. *Id.* at 570. This court affirmed the district court, noting that while B.R.K. may have demonstrated a subjective expectation of privacy, it was not a reasonable one. *In re B.R.K.*, No. C7–01–1466, 2002 WL 1050385, at *2 (Minn.App. May 28, 2002). The Supreme Court reversed this court, holding that not only did B.R.K.

demonstrate a subjective expectation of privacy when he sought to conceal his presence in the home, that expectation was reasonable because he had a previous social relationship with the host, and remained at the home with the host's consent for a purely social gathering. *B.R.K.*, 658 N.W.2d at 576. The court observed that there are many occasions on which people visit the home of another without spending the night such as holiday gatherings and dinner parties; and that "[l]ike an overnight visit, entering the home of another for a short-term social visit is also 'a longstanding social custom that serves functions recognized as valuable by society.'" *Id.* (citing *Minnesota v. Olson*, 495 U.S. 91, 98, 110 S.Ct. 1684, 1689, 109 L.Ed.2d 85 (1990)).

The court took great pains to square its decision with *Carter*, noting that *Carter* does not stand for the proposition that *only* overnight guests have a reasonable expectation of privacy in their host's home. *B.R.K.*, 658 N.W.2d at 574–75. The court noted that *Carter* did not specifically address a defendant's expectation of privacy in terms of their status as social guests, because the focus was on the commercial nature of the defendant's presence in the apartment. *Id.* at 575. The court concluded that " * * * only after taking into account the *lesser expectation of privacy individuals have in commercial property* did the [*Carter*] court conclude that the defendants lacked a reasonable expectation of privacy in the apartment." *Id.*

Applying *B.R.K.*, we conclude that appellant has demonstrated an "actual subjective expectation of privacy" in room 235, because appellant plainly attempted to exclude police from the hotel room. But we do not believe that expectation is one that

---

not been to Thompson's apartment before, and they had left it before their arrest.

*Carter*, 525 U.S. at 102, 119 S.Ct. at 479 (Kennedy J., concurring).

society is willing to recognize as reasonable. *B.R.K.*, 658 N.W.2d at 571. Thus, we decline appellant's invitation to extend him Fourth Amendment protection under *B.R.K.* We do so for two reasons: (1) appellant's nexus to the hotel room and his hosts is nebulous at best; and (2) appellant's presence in the hotel room was primarily for commercial purposes.

At oral argument, appellant's counsel attempted to distance appellant from *Carter* and vigorously argued that this case is on all fours with *B.R.K.* Appellant's counsel stressed the fact that *B.R.K.* specifically recognized the privacy interest of short-term guests who do not stay overnight. We find no merit in this argument. First, appellant's contention that he had a substantial nexus to the hotel room and his hosts is strained. Appellant maintains that he was a guest of his friend, Josh, whose last name he could not remember, and Josh's girlfriend, Denver, who rented the room for them. In an apparent attempt to establish some social nexus with Denver, appellant's counsel claimed at oral argument that appellant was with Denver when she rented the room; but this contention is unsupported in the record. Furthermore, Denver was not present at the time of the search. More importantly, appellant makes no claim that he had any previous social relationship with Denver, or that he even knew her prior to the day in question. Likewise, nothing in the record suggests appellant had a significant social relationship with Josh.

The facts in *B.R.K.* are readily distinguishable. There, B.A.O. specifically consented to B.R.K.'s continued presence in B.A.O.'s home for the party. Equally important, B.A.O. and B.R.K. were friends and thus had a previous social connection with one another. Moreover, after the party was over, B.A.O. "engaged in social interaction with [B.R.K.] when they sat in the basement talking and watching television." *B.R.K.*, 658 N.W.2d at 574. Finally, the court noted that B.A.O. shared his privacy interest with B.R.K. by allowing B.R.K. to participate in locking the doors, turning off the lights, and hiding behind the furnace. *Id.* Here, appellant was in a hotel, not a private home, and had no previous relationship or social connection to Denver. Nor is there any evidence in the record that she invited him to the hotel room or consented to his presence in the hotel room. Indeed, Denver was not even present at the time of the search. Thus, not only did she fail to engage in any social interaction with appellant, she was not there to "share his privacy interest" in keeping the police at bay. Simply put, knowing a friend of a friend who rents a hotel room does not satisfy the "social nexus" set forth in *B.R.K. Id.* at 575 (non-overnight guests with "social nexus" to owner may enjoy reasonable expectation of privacy).

Second, as *B.R.K.* recognizes, those engaged in commercial transactions do not enjoy the same high degree of privacy as those present in a home or a similar social setting. *Id.* Appellant's visit to the hotel room was primarily commercial in nature—he was there to sell marijuana and methamphetamine. As the court stated in *B.R.K.*:

> In *Carter*, the Court * * * focused its analysis on the commercial nature of the defendants' presence in the home. Accordingly, only after taking into account the lesser expectation of privacy individuals have in commercial property did the Court conclude that the defendants lacked a reasonable expectation of privacy in the apartment. The *animating principle* behind *Carter* is that an individual's expectation of privacy in commercial premises is less than an individ-

ual's expectation in a private residence * * *.

*Id.* (emphasis added).

 Appellant's counsel asserted at oral argument that appellant's expectation of privacy in the hotel room was greater than that of the defendants in *Carter* because, in *Carter*, a police officer was able to observe illegal activity through a gap in the blinds, and here, the officers had to make a forced entry into the hotel room to observe the illegal activity. *Carter*, 525 U.S. at 83, 119 S.Ct. at 470. This distinction is meaningless. In any event, the defendants in *Carter*, as the defendant here, did not have a sufficient expectation of privacy to challenge the warrantless entry, search or seizure. *See id.* at 91, 119 S.Ct. at 474.

> A defendant who cannot demonstrate a legitimate expectation of privacy relating to the area searched or the item seized will not have standing to contest the legality of the search or seizure.

*State v. Richards*, 552 N.W.2d 197, 204 (Minn.1996) (citation omitted).

Because we conclude that the facts of the instant case are more like *Carter* than like *B.R.K.*, we reject appellant's argument that he was a short-term social guest in room 235 and hold that because appellant did not have a reasonable expectation of privacy in the room, he cannot claim the protection of the Fourth Amendment of the United States Constitution or the Minnesota Constitution. Accordingly, his conviction stands.

## DECISION

The state preserved the issue of standing by raising it in its post-omnibus memorandum. Appellant waived his "automatic standing" claim by failing to raise it in district court. The district court's factual findings, and its ultimate legal conclusion that appellant lacked standing to challenge the search, are amply supported in the record and not clearly erroneous. Finally, because appellant was not a short-term social guest in the hotel room, but rather present for the purpose of selling marijuana and methamphetamine, his expectation of privacy is not a reasonable one, and he cannot invoke the protection of the Fourth Amendment or the Minnesota Constitution to challenge the search.

**Affirmed.**