*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2383**

State of Minnesota,
Respondent,

vs.

George Kimuhu Gatungu,
Appellant

**Filed November 3, 2014
Affirmed
Chutich, Judge**

Carver County District Court
File No. 10-CR-12-1250

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark Metz, Carver County Attorney, Colin Haley, Assistant County Attorney, Chaska, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Stephen L. Smith, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Halbrooks, Judge; and Ross, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant George Gatungu challenges the denial of his pretrial motion to suppress

evidence of his identification. He claims that the police lacked reasonable, articulable

suspicion to request the identification of a passenger in the car he was driving. He further asserts that had the police never identified his passenger, they would have lacked reasonable, articulable suspicion to conduct an investigatory stop of him. Because Gatungu does not have standing to assert a third party's constitutional rights and because the police had reasonable, articulable suspicion to conduct an investigatory stop of Gatungu, we affirm.

### FACTS

On November 24, 2012, Chaska Police Officer Christopher Pesheck ran a routine registration check on a car carrying a male driver and female passenger. The registration check revealed that the sole registered owner of the car, D.M., was a protected party on a domestic-abuse-no-contact order and that George Gatungu was the named party on the order. Officer Pesheck assumed that D.M. was the female passenger in the car. Suspecting a possible violation of the no-contact order, Officer Pesheck followed the car while attempting to locate a photograph of Gatungu from his onboard computer. Officer Pesheck was ultimately unable to locate either a photograph or description of Gatungu.

Officer Pesheck followed the car until it pulled into a parking lot, at which time Officer Pesheck pulled into a nearby vacant lot. Officer Pesheck observed the male driver walk inside a liquor store. Officer Pesheck then pulled into a parking space approximately two spots away from the car. Officer Pesheck did not turn on his lights or sirens nor did he block the parked car.

Officer Pesheck approached the car and told the female passenger that he suspected a possible violation of a domestic-abuse-no-contact order was occurring.

2

Officer Pesheck said the woman acted "extremely confused about what I was trying to convey to her as the violation of the order" and she "fumbled around almost, it would appear, purposely, stalling . . . when attempting to locate her driver's license or an ID." Based on the woman's behavior, Officer Pesheck suspected that she was hiding something and that she knew a violation of the no-contact order was taking place. When Officer Pesheck obtained the woman's identification and confirmed that she was D.M., he then walked into the liquor store to locate the male driver. The store's owner told Officer Pesheck that the male driver saw Officer Pesheck pull into the liquor store parking lot, and then the male driver ran out the opposite door toward a nearby restaurant.

Officer Pesheck entered the restaurant with another officer, Sergeant Duzan, and recognized the male driver sitting at the bar. Officer Pesheck approached the male driver and asked him to step outside to talk. Once outside, Officer Pesheck asked the male driver for his identification, which revealed that he was George Gatungu. Officer Pesheck then arrested Gatungu for violating the order.

Gatungu was charged with violating a domestic-abuse-no-contact order within ten years of a previous domestic-abuse conviction. *See* Minn. Stat. § 629.75, subd. 2(c) (2012). The parties agreed to proceed under Minnesota Rule of Criminal Procedure 26.01, subdivision 4, also known as a *Lothenbach* proceeding, on the sole issue of whether evidence of Gatungu's identification should be suppressed. Before the hearing, the state amended the complaint to add one count of a misdemeanor violation of a domestic-abuse-no-contact order under Minnesota Statutes section 629.75, subdivision

2(b), and dismissed the original charge. The district court convicted Gatungu, and this appeal followed.

## D E C I S I O N

Gatungu makes several claims concerning the stop and arrest: (1) Officer Pesheck lacked reasonable, articulable suspicion to request D.M.'s identification; (2) D.M was unlawfully seized; (3) Officer Pesheck obtained D.M.'s identification in violation of her Fourth Amendment rights; and (4) Officer Pesheck had no reasonable, articulable suspicion to suspect that Gatungu was violating a domestic-abuse-no-contact order. The state counters that Gatungu has no standing to assert D.M.'s constitutional rights, D.M. was not "seized" for Fourth Amendment purposes and that the police had reasonable, articulable suspicion to request Gatungu's identification. We agree.

When this court reviews a pretrial order on a motion to suppress, we independently review the facts and make a determination, as a matter of law, whether the district court erred in suppressing or not suppressing the evidence. *State v. Jackson*, 742 N.W.2d 163, 168 (Minn. 2007). The district court's factual findings will not be reversed unless they are clearly erroneous or contrary to law, but the legality of an investigatory stop is a question of law that this court reviews de novo. *State v. Eichers*, 853 N.W.2d 114, 118 (Minn. 2014).

### A.     Third-party standing

Fourth Amendment rights are personal and cannot be vicariously asserted on behalf of another person. *Plumoff v. Rickard*, 134 S. Ct. 2012, 2022 (2014); *Overline v. Comm'r of Pub. Safety*, 406 N.W.2d 23, 26 (Minn. App. 1987). "A defendant who seeks

4

the suppression of evidence may not assert the violation of the Fourth Amendment rights of a third party but must allege some violation of his own rights." *State v. Reynolds*, 578 N.W.2d 762, 764 (Minn. App. 1998).

Here, Gatungu attempts to assert the rights of D.M., who is a third party. But he does not have standing to assert D.M.'s Fourth Amendment rights. *See id.* Because Gatungu has no standing to assert D.M.'s Fourth Amendment rights, this court need not consider whether D.M. was unlawfully seized.

### B.    *Seizure of Gatungu*

Both the United States Constitution and the Minnesota Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A police officer may, however, conduct a limited investigatory stop if the officer has reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1883 (1968); *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). An officer's suspicion is reasonable when it is based on specific, articulable facts, *State v. Diede*, 795 N.W.2d 836, 842-43 (Minn. 2011), and is not the product of "mere whim, caprice or idle curiosity," *State v. Pike*, 551 N.W.2d 919, 921 (Minn. 1996). The threshold for reasonable suspicion is not high, but requires more than an "unarticulated hunch" without additional objectively articulable facts. *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007).

This court considers the totality of the circumstances to determine if reasonable suspicion exists. *Id.* The totality of the circumstances includes "the officer's general knowledge and experience, the officer's personal observations, information the officer has

received from other sources, the nature of the offense suspected, the time, the location, and anything else that is relevant." *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987). When considering the totality of the circumstances, the court acknowledges that "trained law enforcement officers are permitted to make inferences and deductions that would be beyond the competence of an untrained person." *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001).

Here, Officer Pesheck's suspicion was reasonable because it was based on several articulable facts. First, Officer Pesheck knew when he checked the license plate of D.M.'s car that the car's registered owner was a protected party under a domestic-abuse-no-contact order. Gatungu claims that Officer Pesheck ran this license check "for no particular reason," but, even assuming that is true, the police may run a license-plate check without violating a citizen's constitutional rights. *See State v. Setinich*, 822 N.W.2d 9, 12 (Minn. App. 2012) (finding that a defendant has no reasonable expectation of privacy in his car's license plate number and that a state trooper's computerized license-plate check did not violate the defendant's Fourth Amendment rights).

Second, when Officer Pesheck approached D.M.'s parked car and requested her identification, he observed that D.M. fumbled around while attempting to locate her identification, and she acted confused when Officer Pesheck asked her about the no-contact order. Relying on his general knowledge and experience as a law enforcement officer, Officer Pesheck reasonably inferred that D.M. was purposely stalling and knew a violation of the law was occurring. *See Appelgate*, 402 N.W.2d at 108 (permitting an officer to make deductions based on general knowledge and experience).

6

Third, Officer Pesheck learned that when Gatungu saw Officer Pesheck pull into the parking lot, Gatungu ran out of the liquor store from the opposite door he had entered. Evasive conduct is a circumstance that can create or bolster an officer's reasonable suspicion of criminal activity. *See State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992) (upholding an investigatory stop based on defendant's evasive conduct and immediate departure from a building that was known to contain drug activity). Gatungu's immediate departure upon seeing Officer Pesheck was evasive conduct that supports the reasonableness of Officer Pesheck's suspicion.

Considering the totality of the circumstances—D.M.'s status as a protected party under a domestic-abuse-no-contact order, D.M.'s suspicious behavior, and Gatungu's evasive conduct at the liquor store—Officer Pesheck had the requisite reasonable, articulable suspicion to make a lawful investigatory stop of Gatungu. Therefore, the district court did not err when it denied Gatungu's motion to suppress evidence of his identification.

**Affirmed.**